### BRAZELTON v. ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS.
#### (No. 971–4808.)

Commission of Appeals of Texas, Section A. June 25, 1927.

1. Appeal and error ⬤⟿972—Where trial court did not abuse discretion in permitting argument alleged to be inflammatory and not based on evidence, there was no ground for reversal.

In action by employee of railway company for injuries resulting in loss of eye while working in defendant's shops, where an argument, alleged to be inflammatory and not based on evidence, could not be said to clearly prejudice appellant's rights and the trial court did not abuse its discretion in permitting it, there was no ground for reversal.

2. Witnesses ⬤⟿245—Refusal to permit witness to answer question held proper where answer would have been repetition.

Refusal to permit a witness to answer a question, where the answer would have resulted only in the repetition of what the witness had already stated, held proper.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Action by J. P. Brazelton against the St. Louis, Southwestern Railway Company of Texas. Judgment for plaintiff was reversed by the Court of Civil Appeals (290 S. W. 825), and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

Pat M. Neff and Jos. W. Hale, both of Waco, for plaintiff in error.

Trippet, Boggess & Sheely, of Waco, for defendant in error.

HARVEY, P. J. J. B. Brazelton was in the employ of the St. Louis Southwestern Railway Company, as a machinist, in the shops of said company at Waco. The duties of his employment consisted of making repairs on locomotives and other equipment of the railway company. On March 10, 1925, he was directed by his foreman to remove certain iron taps from the reverse lever of a certain locomotive that was in the shop to be repaired. The foreman directed him to cut off the taps with a hammer and cold chisel. While engaged in thus cutting off one of the taps, a sliver of metal broke from the hammer, with which he was striking the cold chisel, and flew into his left eye, putting it out. On account of said injury, Brazelton seeks to recover damages of the railway company. Upon verdict of the jury, rendered on special issues, the trial court entered judgment for Brazelton for the sum of $9,375 damages. This judgment was reversed by the Court of Civil Appeals (290 S. W. 825), and Brazelton sued out a writ of error.

Among the several grounds of negligence charged against the railway company are the following: (a) In failing to furnish Brazelton with an acetylene torch to remove said taps; and (b) in failing to furnish him with a suitable hammer with which to do said work.

The Court of Civil Appeals sustained an assignment of error presented by the railway company, in which complaint is made of the following language used by Brazelton's counsel in his opening argument to the jury:

"No; they are not to blame for the lights, for that door to the furnace being open, or that acetylene torch proposition. Oh, no, no. 'We ought not to have used an acetylene torch,' and why not use an acetylene torch to take that tap off under conditions of that kind? They let the cat out of the bag when the witness said it was too expensive. Too expensive; that's the plea, and the only reason they suggest in this case for not using an acetylene torch on that day. How much do you suppose it would have cost, gentlemen of the jury, to have moved the acetylene torch, even though it did weigh 150 pounds, up there and safely remove those taps? Would

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

it have cost the railroad company as much to move that torch up there and remove those taps as it has cost Brazelton to take a hammer and chisel and knock it off there in the dark, with those fluctuating lights, under conditions such as are described here? Your verdict in this case, gentlemen of the jury, will be the answer. If you turn him out, then the Cotton Belt was right when they said it would be cheaper and less expensive not to use the acetylene torch, and let him knock his eye out; they wouldn't give him the acetylene torch because it was too expensive, and that's the same reason they didn't give him a new hammer, and I tell you when the juries of McLennan county give the Cotton Belt to understand it is cheaper for them to furnish suitable and adequate tools and lights and hammers free of defects than it is to force their employees to work with that kind of equipment and knock out their eyes, then they will improve their system, and not until."

The grounds of objection urged against said argument are that it was "prejudicial, inflammatory, and not based on evidence, and was an appeal to the jury to penalize the defendant in this case and punish it so that it would provide proper tools for its employees."

There is evidence in the record to show that the safest method of removing the taps in question was to burn them off with an acetylene torch. One of the witnesses for the railway company testified that it was cheaper to remove these taps with a hammer and chisel than with an acetylene torch; that the cost of using such a torch in doing work of that kind is prohibitive. There is also evidence of insufficient lighting conditions under which Brazelton was doing this work. There is also evidence to show that the hammer which Brazelton was using on the occasion in question was old, battered, and worn, and had niches in the edge of its striking surface where small bits of metal had flaked off. Though the evidence was conflicting in material respects, there is evidence tending to show that a long time before the accident this particular hammer had been furnished Brazelton by the company to use in the performance of the duties of his employment; that having become battered, worn, and brittle from long use, the hammer was defective and unsafe; that Brazelton, some months prior to the accident in question, had informed his foreman of the defective condition of the hammer and requested that he be furnished a new hammer; that the foreman informed him that the company had no new hammers in stock, and directed Brazelton to continue to use this old hammer in doing his work until some new hammers were in stock. No new hammer was thereafter furnished him.

[1] The argument of counsel, stated above, had reference to these matters of evidence which we have briefly outlined. In the case of Emberlin v. Railway Co., 284 S. W. 539, in considering the rule for district courts which provides that in aguments to the jury "counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel," we said:

"It is only when from the record on appeal, it is clear that argument in violation of this rule was calculated to prejudice the rights of the party complaining that an appellate court is authorized to overrule a contrary holding by the trial court on this question. Unless it clearly appears that the trial court has abused its discretion, its holding must stand."

In the present case, the complaint of the railway company, directed at the language of counsel which has been stated, was overruled by the trial court. Under the circumstances, we cannot say that this argument was not warranted by the evidence, much less that there was an abuse of discretion by the trial court in permitting it. In our opinion the Court of Civil Appeals committed error in sustaining this assignment and reversing the judgment of the trial court because of the language stated.

[2] We think, also, that the Court of Civil Appeals committed error in sustaining the assignment of error under which the railway company complains of the trial court's refusal to permit Brazelton to answer the following question, propounded to him by the attorney for the railway company, to wit:

"Mr. Brazelton, now the hammer you complained about to Hodges (the foreman), that was the hammer that had a three-eighths inch hole in it, was it?"

The bill of exception relating to this matter shows that Brazelton would have given an affirmative answer to this question. Under the circumstances, it was not error for the trial court to refuse to permit this question to be answered. The circumstances are these. Brazelton was the first witness introduced by the plaintiff. On cross-examination by defendant's counsel, he testified that his hammer, which he was using at the time of the accident, was marked by a three-eighths inch hole drilled in the head of the hammer; that this was the hammer of which he had complained to his foreman, Mr. Hodges, as has been stated. After the plaintiff had concluded the introduction of testimony in chief, the railway company called to the stand various witnesses, including one J. W. Tanner, who was Brazelton's helper on the occasion in question. While Tanner was on the witness stand, the defendant's counsel exhibited to him a hammer which he, Tanner, identified as being the one which Brazelton was using when the latter was injured. The hammer, so identified by Tanner, was not marked with a three-eighths inch hole. After introduction of testimony in behalf of the defendant company had been concluded, Brazelton was recalled to the witness stand by his counsel, and, after testifying to various matters in rebuttal and while being cross-examined by defendant's counsel, the hammer that had been identified by Tanner was introduced in evidence by plaintiff's counsel. Whereupon

the question, which has been set out above, was propounded to Brazelton by the defendant's counsel. An answer to such question would have resulted only in the repetition of what Brazelton had already stated, in substance and effect and in unambiguous language, upon his cross-examination by defendant's counsel. In our opinion the court did not abuse its discretion in refusing to allow this repetition.

We have duly examined all other matters presented in the Court of Civil Appeals by the railway company under proper assignments of error, and in our opinion no reversible error is disclosed.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause be reversed, and that the judgment of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.