Accordingly we recommend that the question certified be answered "No."

CURETON, C. J. The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

## LINER et al. v. UNITED STATES TORPEDO CO. (No. 945—5059.)

Commission of Appeals of Texas, Section B. Jan. 9, 1929.

Hawkins, Hawkins & David, G. O. Bateman, and D. T. Bowles, all of Breckenridge, for plaintiffs in error.

Benson & Dean and Ben J. Dean, all of Breckenridge, and G. C. Spillers, of Tulsa, Okl., for defendant in error.

SPEER, J. E. R. Liner sued the United States Torpedo Company to recover damages alleged to have been sustained by reason of negligence of the defendant in shooting an oil well owned by the plaintiff. Plaintiff owned an undivided $15/32$ interest in the oil and gas lease upon which the well was situated and the casing in the well. R. F. Brown and others, owners of an interest in the lease and well, intervened. The case was submitted to a jury upon special issues, upon the answers to which judgment was rendered against the defendant. Upon appeal the Court of Civil Appeals for the Eleventh District, composed of special justices, reversed the judgment and remanded the cause for another trial. 300 S. W. 641.

The first question presented in the application for writ of error challenges the holding of the Court of Civil Appeals that the trial court erred in permitting counsel for appellees (plaintiffs in error) to ask the witness Kingston, an expert witness for the appellant, a hypothetical question which did not present for consideration that salt water was being swabbed from the well, in seeking an answer whether or not it was proper to shoot the well. The Court of Civil Appeals at this point held: "The question, omitting to include the element of salt water therein, failed to embrace a very important fact that had support in the evidence. The question should have been so framed as to reflect the theory of the parties propounding it as shown by the facts admitted, or in evidence, and we do not think the appellee was entitled to ask an improper question of this character and thereby cast upon the opposing counsel the burden of supplying its omissions or deficiencies. The objection should have been sustained."

In this the Court of Civil Appeals erred. The evidence was sharply conflicting as, to whether or not salt water was being swabbed into the tank at the time, and this being true the party propounding the question was entitled to submit it and have it answered upon the assumption that its version of the facts was correct. If the opposite party desired to further affect the answer by the consideration of its version of the testimony with respect to salt water, it of course had the right to interrogate the witness with respect to the affect of swabbing salt water; but such right upon its part would not defeat the plaintiff and interveners from having the expert's opinion upon the facts their evidence tended to show. Gulf, etc., Co. v. Compton, 75 Tex. 667, 13 S. W. 667; Fort Worth, etc., Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834; Missouri, K. & T. R. Co. v. Johnson (Tex. Civ. App.) 49 S. W. 265; Id., 92 Tex. 380, 48 S. W. 568; Schaff v. Shepherd (Tex. Civ. App.) 196 S. W. 232 (writ refused); 22 C. J. p. 724.

Moreover, the entire inquiry was entirely beside the issues in the case, as indisputably the defendant was employed for the express purpose of shooting the well and undertook that task; whereupon it became its duty in the performance of its undertaking to use ordinary care. So that the question of the propriety of shooting the well whether there was, or was not, salt water swabbing, was entirely immaterial.

It is next complained that the Court of Civil Appeals erred in reversing the trial court for admitting the testimony of the witness Mimms as to a conversation between him and Blair, who represented the defendant in error in the attempt to shoot the well. The matter is thus disposed of by the Court of Civil Appeals:

"The witness Mimms testified that soon after the premature explosion he rode back to town with Bill Blair, the shooter, and, when they had gone a mile or so from the well, Blair said to him: 'You know that is hell, and would not happen to a big company; it has got to happen to some poor devil like Liner that can't afford it.' I said, "Yes; it is hard on him, bad for Liner." Then Blair

said, "You know I am going to see the boys and see if I can get them to help him out." That is what he said to me.'

"This testimony was objected to by defendant 'because the agent had no authority to bind the company by such conversation, and such conversation would not be binding upon the defendant company.'

"Blair's statements were evidently offered as an admission of liability on the part of the appellant, or of negligence upon his part. We can see no other purpose in tendering such testimony, but the objection of appellant clearly contends that Blair, 'the agent, had no authority to bind the company by such conversation. * * *' Blair's statements were not admissible as admission of liability of appellant nor of negligence upon his part, nor were they admissible to bind the appellant in the respect suggested. Further and independently we do not think, under the facts of the case, that the statements when made were within the scope of the agent's authority. * * * At most, Blair's statement was but an expression of sympathy and inadmissible as such. * * * However, we are convinced that the statements of Blair introduced in evidence were of such a character that the admission thereof was highly prejudicial, and in all probability said statements were appropriated by the jury for the very purpose for which they were not admissible."

. In this we think the court erred. Blair was the employé and representative of the defendant company sent specially for the purpose of shooting the well under its contract with plaintiff in error Liner. Undoubtedly he was such employé and representative of the company during all the time the company was engaged in the task of shooting the well. This included the going to the work and the returning therefrom. The statement quoted was not under the circumstances shown a part of the res gestæ, but it was within the apparent scope of the authority of the company's representative having the work in charge, and as such was admissible as an admission upon the part of the company.

██ But this is at last theory, for when the statement is examined it will be found not to justify the inference of an admission of liability on the part of the torpedo company, but clearly it amounts to a denial of liability, and, as indicated by the Court of Civil Appeals, an expression of sympathy for Liner, whom the speaker declared to be a poor devil not able to afford the loss. No doubt this expression of sympathy and indication of poverty of Liner was not admissible, but no such objection was made to the evidence, and the trial court's ruling can only be reviewed in the light of the precise objections made.

██ Furthermore, there was other evidence not objected to, to the same effect. At the moment of the premature blast, Liner accused Blair of causing the same through a too fast descent of the squib. Whereupon Blair said: "Liner, that makes me sick. * * * It is too bad it could not happen to a large company or some one able to stand it."

As against the objections urged to his want of authority to speak for the torpedo company, this testimony was as much subject to exclusion as that first quoted above and, being admitted without objection, renders harmless at all events the ruling being discussed.

██ Plaintiffs in error complain that the Court of Civil Appeals erred in holding that the case should have been submitted on the issue of contributory negligence by reason of a "demand by Liner that the bumper squib be run at night." At this point the Court of Civil Appeals said: "If the evidence raises the issue as to whether Liner was guilty of a negligent act in demanding that the bumper squib be run at night, thereby contributing to the proximate cause of the injury to his property, the appellant is entitled to have such defense submitted to the jury."

Upon its further holding that the issue was raised, a reversal was ordered. The court assumed that such act was a contributing proximate cause of the injury, but we find no evidence whatever in the record to support such an assumption, and therefore to support the submission of the issue. The nearest approach is this: Blair testified: "I don't think you can see down in $5\frac{3}{16}$-inch casing to speak of at noon when the sun is shining. I don't attempt to look down in the casing when I set a bumper squib. I don't attempt to use my eyesight in setting a bumper squib. I do that by machinery and sense of feeling on the wire. I don't depend on my eyesight to run a bumper squib but depend on my eyesight and feeling, but you can see the machinery working. I can't say it was caused by my inability to see what was going on there. No, that did not have anything to do with it. You can control the speed of the reel at night as well as in daytime, if you can see. Darkness has nothing to do with the way the machinery runs or how I run it." The witness further testified that the engine house, walk, and derrick were lighted so one could see.

██ Again, no proper request for such a charge was made of the court, the only request for a submission of the issue of contributory negligence being as follows:

"(1) Was the explosion of the bumper squib at approximately 1800 feet in the Liner Well No. 2, located on the R. F. Brown farm, Stephens County, Texas, at the time and place shown by the testimony in this case, exploded on account of the negligence of the plaintiff as hereinbefore defined and explained to you?"

"(2) Was the explosion of the bumper squib approximately at the depth of 1800 feet in the Liner Well No. 2, located on the R. F. Brown farm, Stephens County, Texas, at the time and place shown by the testimony in this case exploded on account of the negligence partly of plaintiff and partly of the defendant?" And

"(3) Was the bumper squib exploded approximately at the depth of 1800 feet in the Liner Well No. 2, located on the R. F. Brown farm in Stephens County, Texas, caused by the condition of the well, casing and fluid therein as shown by the testimony in· this case?"

These issues were accompanied by instructions in the nature of a general charge, for which reason alone they were properly refused; but also the instructions were on the weight of the evidence wrongfully assuming certain facts to be true, for which further reason, of course, the same could not be given. There is nothing in the record that could be construed into a request for the submission of the issue here being discussed. But if the issue had been properly requested, there is nothing in the record tending to show that Liner's request, even though made, to run the squib at night, was negligence, or that it proximately contributed to cause the explosion, and even beyond this there was no allegation in the answer of these essential elements to authorize the submission of the issue. This point was wrongfully decided by the Court of Civil Appeals.

 In the twelfth assignment it is complained that the court erred in holding that the trial court erred in not submitting an issue of contributory negligence based on evidence to the effect that Liner failed to run the bailer prior to the running of the bumper squib. The Court of Civil Appeals held that the evidence raised this issue and made the failure to submit it another ground for reversal.

Here again there was no pleading that the failure of the plaintiff Liner to run the bailer contributed proximately to the injuries complained of, nor was any such issue requested at the trial; the only request with reference to contributory negligence being those already considered, which were entirely insufficient to embrace the issue here being considered. It conclusively appears from the testimony of Blair himself that the failure to run the bailer was not a contributing cause of the premature explosion. That witness testified: "I don't remember whether I asked Liner to run the bailer or not. After we got out there Liner said he would take a chance on the well the way it was and not run the bailer. I had some conversation with him about running the bailer. He did not tell me what chance it was he would take. I did not ask him to take any chance. I did not feel it was my duty after Liner made the remark he did to be negligent or careless in the way I handled the nitro. I absolutely thought after Liner made that remark, that it was my duty to be just as careful with the nitro as it was before he made the remark. I don't release my careful way of handling nitro because of remarks made by people about a well. I absolutely know it is dangerous stuff and always handle it in a careful way, it is always my duty to do that. I am in the business of handling nitro-glycerine and in my opinion I know more about it than the operator of a well and know more about how to handle it in a careful and prudent way. Mr. Liner did not tell me what it was he was taking a chance on. I was tired when I got back out there and it was dark. I would not say it was because I was tired when I got back there I wanted to wait until morning, but like I told Mr. Liner, it was a tedious job to run one of the things and better wait until morning. It was a tedious job to run it. Because of the remark he made I did not release any of my careful manner in being tedious in running it. I was just as careful after he made that remark as I was before. I did not consider that any release of my obligation to be careful. I did not understand when Liner said he would take a chance to mean that he would take a chance on the speed with which I would run the bumper in. I did not understand him to mean I could run it as fast as I wanted to and he would take a chance on that."

 Further, the reversal by the Court of Civil Appeals was put upon the ground that the trial court erred in not submitting the issue of contributory negligence by reason of plaintiff Liner's "placing his hand on the wire between the reel and the bumper squib while it was being run." As to this the court says: "Ordinarily defendant cannot show acts of contributory negligence not specifically pleaded by the answer. * * * But plaintiff, in developing his case, brought out the fact that he placed his hand on the wire, which in our opinion developed evidence relating thereto sufficient to raise a question of fact, and the same should have been submitted to the jury, though not pleaded."

An issue to be submitted must be raised not only by the evidence, but in the pleadings as well. A fact, however, thoroughly proved, will not support or authorize a judgment as to a matter not pleaded. Moore v. Jones (Tex. Civ. App.) 278 S. W. 326; Watson Co., Builders, v. Bleeker (Tex. Civ. App.) 285 S. W. 637; Flagg v. Matthews (Tex. Civ. App.) 287 S. W. 299; Browne Grain Co. v. Farmers' & Merchants' Nat. Bank of Abilene (Tex. Civ. App.) 173 S. W. 942; Modern Woodmen of America v. Yanowsky (Tex. Civ. App.) 187 S. W. 728. If plaintiff, in developing his case, brought out evidence sufficient to raise the issue of contributory negligence, and that issue was pleaded, this situation might, and

556

would have, a bearing upon the question of the burden of proof in the case; but it would not, as held by the Court of Civil Appeals, constitute an issue in the case in the absence of pleading. The issue here being discussed was not raised by the pleading, and, moreover, it was not raised by the evidence. It is inconceivable that the act complained of could contribute to cause a premature explosion. The evidence indicates that, from its structure and manner of explosion, the bumper squib could be fired by coming in contact with the fluid standing in the well, by reason of the retarding of the can containing the explosive, causing a window weight used as a follower on the fast descending contraption to strike the percussion and explode the nitroglycerine. The negligence recovered upon was the rapidity with which Blair permitted the squib to descend and strike the fluid. The only possible effect of placing the hand upon the wire would be to retard its speed, and thereby lessen the chances of an explosion by reason of the window weight's overtaking and striking the explosion cap. The evidence shows that this contact could be produced by the slowing up of the can upon coming in contact with the fluid in the well, and, furthermore, in all probability this is the way the explosion happened. There is also a complete dearth of evidence that the act of Liner in placing his hands upon the wire in the way he did was negligence at all. The undisputed testimony shows that his efforts were being directed to prevent a too speedy descent of the squib, and is well illustrated by the following from his testimony: "I stooped over and said there goes the 1800 foot splice, that had just gone through my fingers. I stooped over like this (indicating) and put my hand on the wire and warned him. When that splice passed through my fingers I told him there goes the 1800 foot splice because I had been warning him, trying to get him to slow the reel down and he would not do it. I was worried and knew the splice in the line was at 1800 feet and when I put my hand on the line the splice did go through and I called his attention to it as further warning and the shot went off in the bumper squib about the time the splice got to the derrick."

This testimony was substantially repeated by other disinterested witnesses.

What we have said under preceding assignments shows that the submission of the issue here being considered was not requested. The Court of Civil Appeals erred in placing the reversal upon this.

We have examined the many other questions presented in the 45 assignments of error in the Court of Civil Appeals, and are of the opinion they were all correctly disposed of in that court.

For the errors of the Court of Civil Appeals in reversing the judgment of the trial court, we recommend that its judgment be reversed and that of the trial court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.