## HUMPHREYS v. ROBERSON.
### No. 12674.

Court of Civil Appeals of Texas. Fort Worth.
July 16, 1932.

Rehearing Denied Sept. 24, 1932.

Bruce & Dawson, of Wichita Falls, for appellant.

Taylor, Muse & Taylor, of Wichita Falls, for appellee.

DUNKLIN, J.

Raymond Roberson employed Dr. S. T. Humphreys to treat him for granulated eyelids, designated in the medical profession as "trachoma." Dr. Humphreys maintained an office in Nocona, Tex., where he was engaged as a practicing physician and surgeon and where he administered treatment to Roberson's eyes.

Roberson instituted this suit against Dr. Humphreys to recover damages for injury to one of his eyes which he alleged was caused by the negligence of defendant in administering the treatment. From a judgment rendered in favor of plaintiff for damages in the sum of $3,000, the defendant has appealed.

The trial of the case was before a jury, and following are special issues submitted to the jury and findings made thereon, together with definitions of legal terms given by the court in connection therewith:

" 'Negligence' is the failure to use ordinary care, and ordinary care is such care as a person of ordinary prudence would use under the same or similar circumstances.

" 'Negligence' as applied to the conduct of a physician is the failure to use ordinary care and as regards a doctor in the treatment of his patient it is a failure to exercise or use such skill and care as is generally possessed or used by persons engaged in such profession in such vicinity.

" 'Proximate cause' is that cause which in a natural continuous and unbroken sequence produces an event and without which that event would not have occurred; and to be the proximate cause of an event it must be such that a person of ordinary care would have reasonably foreseen that the injury or some similar injury would occur. There may be more than one proximate cause.

"Special Issue No. 1: Did Dr. Humphreys permit the electrical appliance to come in contact with the left eyeball of the plaintiff? Answer: Yes.

"2. Was such touching of said eye ball, if it was touched, negligence as that term is above defined to you? Answer: Yes.

"If you have answered the preceding issue 'no,' then you need not answer any of the following issues, but if you have answered the same 'yes,' then you will answer the following special issue:

"3. Was such negligence, if any, the proximate cause, as that term is above defined, of any injury to plaintiff's eyeball and eyesight? Answer: Yes.

"If you have answered issues 1, 2, or 3, 'no,' then you need not answer the following special issues, but if you have answered said issues 1, 2 and 3, 'yes,' then you will answer the following:

"4. What sum of money, if any, if paid now in cash, will fairly compensate the plaintiff for the injury, if any you find he received, of which the negligence of the defendant, if any you have found, was the proximate cause? Answer: $3,000.00."

The following are special issues requested by the defendant:

"1. Was the granular eyelids of the plaintiff the sole proximate cause of the scarred condition of his eyeball? Answer: No.

"2. Did the plaintiff neglect to follow the instructions of Dr. Humphreys in the matter of going to Dr. Humphreys at regular times for examination and treatment of his eye? Answer: Yes.

"If you have answered the preceding special issues 'no,' then you need not answer the following special issue, but if you have answered the same 'yes,' then you will answer the following special issue:

"2-A. Was such neglect, if any, negligence as that term has been herein defined? Answer: Yes.

"3. Was such negligence, if any, on the part of the plaintiff, to go for regular examination and treatment of his eye, the sole proximate cause of the loss or impairment of his eyesight? Answer: No.

"5. Is the sight of plaintiff's left eye totally destroyed for all practical purposes? Answer: Yes."

Upon the trial of the case defendant objected to the submission of special issue No. 3 in the following language: "Defendant specially objects to special issue No. 3 in that said issue is misleading and confusing to the jury and allows the jury to go entirely outside of the issues pleaded in arriving at and determining the proper answer to said special issue and allows the jury to consider elements entering into injury to the plaintiff's eyesight which have not been pleaded and which are not in the case and which have incidentally been brought into the case through the evidence and said issue does not limit or

934

confine the jury's consideration to the elements and issues raised by the pleading, and the same is therefore, in the form submitted, misleading, confusing, immaterial and improper." And error has been assigned here to the action of the court in overruling that objection.

In plaintiff's petition it was alleged that while suffering from granulated eyelids, he applied to Dr. Humphreys for treatment, and Dr. Humphreys advised him that he could effect a cure by the use of electricity and an electrical appliance, and that such treatment was administered. In that connection the allegations of the petition read as follows: "That the defendant, while he was treating this plaintiff, on the second trip and for the second time, took an electrical appliance strongly charged with electricity and after having turned up his upper eyelid with his finger, he carelessly, recklessly and negligently applied said electrical appliance to the plaintiff's upper eyelid on the inside and stated that he was burning the granulations off of his eyelid. That he likewise with his fingers turned down the lower eyelid of the plaintiff and applied said electrical appliance to the inside of his lower eyelid. That in applying said electrical appliance and said electricity to the eyelid of the plaintiff that he carelessly, recklessly and negligently permitted said electrical appliance to come in contact with the eyeball of the plaintiff and burned and seared the eyeball and destroyed the sight thereof. That the application of said electricity and said electrical appliance as hereinbefore alleged was careless, negligent and reckless upon the part of the defendant. And that the application of said electricity and said electrical appliance as hereinbefore alleged was the direct and proximate cause of the injuries and damages, hereinbefore alleged and that the defendant was not only guilty of negligence, carelessness and recklessness, in so applying said electrical appliance to the eyelids of the plaintiff, but was guilty of gross negligence, carelessness and recklessness, in so applying said electricity and said electrical appliances to the plaintiff's eyelids and in burning his eyeball as hereinbefore alleged. That it was the plaintiff's left eye that suffered the injuries and damages as hereinbefore alleged and that by reason of the facts hereinbefore alleged the plaintiff is and was damaged as hereinafter alleged."

No assignment of error is presented to issues 1 and 2, on the ground that those issues were not tendered in plaintiff's pleadings. Indeed, we believe that the quoted allegations do present those issues; and therefore we are unable to perceive how it could be said that issue No. 3 was objectionable for lack of allegations in the petition as a basis therefor. The only inquiry in that issue was

whether or not the alleged negligence presented in issues Nos. 1 and 2 was the proximate cause of the injury to one of plaintiff's eyes.

■ Appellant contends that the evidence offered by the plaintiff was insufficient to support the findings made by the jury of negligence, on which the judgment was based, and that therefore his request for an instructed verdict in his favor should have been granted. Upon the trial the evidence offered was conflicting as to whether or not plaintiff's eyeball was touched and burned by an electric current from the appliance used by the defendant in treating the granulated lid when it was turned back from the eyeball for that purpose. According to the testimony offered by the defendant, the electrical appliance was applied to the granulated lid only and did not come in contact with the eyeball, and the scar and injury to the plaintiff's eyeball was caused by irritation due to the granules of the eyelid rubbing against it in winking the eyes. But according to testimony offered by plaintiff, the electrical instrument used by the defendant touched the eyeball of his left eye and so burned and scarred it as to cause the loss of the sight in that eye. Accordingly, we cannot say that the court erred in overruling appellant's motion for an instructed verdict in his favor.

■ On the trial the following objection was presented to the trial judge to the definition of "negligence," given in the court's charge: "The defendant excepts and objects to the definition of 'negligence' as applied to the conduct of the defendant in this case and says that the same is not a correct definition under the law and under the facts as shown in evidence in this case; that the same places a greater burden upon the defendant than is required by law to be placed upon him in the practice of his profession in the treatment of the case involved in this litigation. That the same is too general, is misleading and gives the jury no proper or sufficient guide to properly and lawfully determine and measure the conduct of the defendant in the treatment of the plaintiff and therefore to determine whether or not such conduct was in law negligence."

Under an assignment of error based upon the overruling of that objection, it is insisted that reversible error has been shown, in that the jury would likely be confused by the two separate definitions of negligence and would make ordinary care, as defined in the first definition, the test of the care required of the defendant in the treatment of plaintiff's eyes, as presented in the second definition.

It will be noted that the issue of contributory negligence on the part of the plaintiff was tendered in defendant's pleadings as a defense to plaintiff's cause of action. The definition of "ordinary care" given in the

first definition of "negligence" was therefore correct as applied to that defense, and the giving of it was proper. The jury necessarily must have understood that the second definition of "negligence" was the test in determining the issue of negligence of the defendant and there was no prejudicial error in that definition. Nor was there any request by the defendant for an instruction from the court to the jury that the first definition of "negligence" would not be the test in determining the alleged negligence of defendant. Furthermore, the objection made to the definitions of negligence did not point out the necessity of such an instruction. Hamilton v. Harris (Tex. Civ. App.) 223 S. W. 533; Turner v. Stoker (Tex. Civ. App.) 289 S. W. 190 (writ refused); Dunn v. Styron (Tex. Civ. App.) 10 S.W.(2d) 1018.

An assignment has been presented here based upon argument made by counsel for the plaintiff as shown in a bill of exception reading as follows:

"While the Honorable R. E. Taylor of counsel for the plaintiff was making the concluding and closing argument to the jury trying this said cause, he stated to and in the presence of the jury as a part of his argument the following:

" 'Gentlemen of the jury, Dr. Stripling, the $100.00 a day witness, testified before you that poor folks did not know when they were well, I think Dr. Stripling thinks that poor folks don't suffer like rich ones.'

"Upon objection being made, Judge Taylor continued:

" 'All right, I'll use the exact language of Dr. Stripling, he. said that poor folks did not know when they were well.'

"In the course of his argument later, Judge Taylor used the following language:

" 'Gentlemen of the jury, the proof shows in this case that Roberson is only a poor laboring boy, the proof shows that he has not been able to pay his doctor bill, except $2.00 or $3.00 to Dr. Lawson. That is not any sign he can't suffer or that he should not have pay for his left eye.'

"The defendant's counsel objected to all of said argument upon the ground that Dr. Stripling had not so testified to any such facts and that the argument was inflammatory and prejudicial, and thereupon the court made the following remarks to the jury:

" 'Gentlemen of the jury, the Court does not remember whether Dr. Stripling so testified as quoted by Mr. Taylor, but that is for you to determine.'

"And, thereupon, defendant's counsel excepted to the action of the court in not sustaining his objection and to which action and ruling of the court the defendant's counsel then and there in open court excepted. That argument was not in reply to any argument

made by the defendant's counsel. Dr. Stripling on cross-examination had testified that he was charging the defendant $100.00. for coming from Wichita Falls to Montague to testify in the case."

The testimony, given by Dr. Stripling, introduced as a witness for the defendant, to which counsel for plaintiff referred in the argument shown in the bill of exception, was as follows: "I told you the way a trachomatous condition works. Sometimes they get better and then they will get worse. They go along that way for a period of years. They have. flare-ups and then there will be times they feel like they are all right. You can treat a case for a couple of months,—and that is the way with poor people. They feel like they are all right and want to go to work. They are better and they will go to work and they will have a flare-up. If they don't have any treatment at all it behaves that way. They have times that they are better and times that they are worse, depending on conditions. You can take a case of trachoma and get them out in the dust, or maybe in the harvest field, particularly in the summer time, and they will get worse. If they are not doing anything, just lounging around the house taking care of themselves and out of the light pretty well, they get better."

In the development of plaintiff's case he testified that he was a day laborer, earning his living by farm work whenever he was able to get employment and had been working for $2 a day. And as shown in the bill of exception, Dr. Stripling had testified that he was charging the defendant $100 a day for appearing as a witness in his behalf. It thus appears that the statement made by counsel in his argument that Dr. Stripling was a $100 a day witness and that plaintiff was a poor laboring boy and unable to pay a doctor's bill in excess of $2 or $3 a day was. not outside the record; and defendant's objection was made to the argument as a whole. By rule 39, governing trial of cases in the district and county courts, it is provided that: "Counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel."

In several cases cited by appellant, including Crow v. Monroe (Tex. Civ. App.) 273 S. W. 886, Hewitt v. Buchanan (Tex. Civ. App.) 4 S.W.(2d) 169, 178, and Davis v. Hill (Tex. Civ. App.) 271 S. W. 281, judgments were reversed on account of arguments calculated to create bias in favor of litigants by stressing their poverty as opposed to more fortunate conditions of the opposing parties. But it is also the rule that counsel have a right to indulge in reasonable deductions and inferences from any evidence that has been introduced. Moore v. Rogers, 84 Tex. 1, 19 S. W. 283. In Texas Telegraph & Telephone Co. v. Seiders, 9 Tex. Civ. App. 431, 29 S. W.

258, 263, in which a writ of error was refused, the court had this to say: "What is and what is not argument deducible from the testimony, or what an attorney may say in argument, is often a very nice question, and difficult to decide. If courts should reverse every case because counsel indulged in a course of argument not precisely in point, or even bad reasoning, drawing false conclusions, there would be few cases that could stand criticism on appeal, and most of them would be reversed upon this ground alone. The jury is not unreasonably presumed to have intelligence to understand and pass upon the facts, and determine what facts are established, as well as what the facts prove. It is the province of the jury, as a necessary part of the court, to do this; and the court should not undertake to protect them by giving the court's view of the weight or effect of the evidence, by restricting argument of counsel to such view. The court should not take such responsibility. If counsel assert facts that are not in proof, or argue issues that are clearly not raised by pleading or proof, the court may interfere, and by so doing correct the evil that may have occurred; but it cannot undertake to control the logic of the facts in evidence, and tell the jury that an argument on the facts is not justifiable. The jury must do this. The law imposes this duty upon them, and the court cannot assume the responsibility." To a like effect, see Beaumont Traction Co. v. Dilworth (Tex. Civ. App.) 94 S. W. 352.

In Brazelton v. St. L. S. W. Ry. Co., 296 S. W. 290, 291, the Commission of Appeals referred to the rule that "counsel shall be required to confine the argument strictly to the evidence and to the arguments of opposing counsel," and then quoted with approval the following announcement in a former case by the same court: "It is only when from the record on appeal, it is clear that argument in violation of this rule was calculated to prejudice the rights of the party complaining that an appellate court is authorized to overrule a contrary holding by the trial court on this question. Unless it clearly appears that the trial court has abused its discretion, its holding must stand."

In Russell v. Martin, reported in (Tex. Com. App.) 49 S.W.(2d) 699, 700, the plaintiff Florence Martin recovered a judgment in the trial court against the defendants J. V. Russell and wife for $3,000 damages as the result of injuries sustained by plaintiff in a collision between her car and another car driven by the defendants. Counsel for plaintiff in his closing argument to the jury said: "Gentlemen of the jury, it makes my blood boil to see them put on such expert testimony as the defendants put on before you in this case by their witness Dr. Braswell, who has tried to make it appear that this plaintiff hasn't received any injuries. Gentlemen of the jury, don't you see how hard it is for a plaintiff to get justice in the court house." In the opinion by the Commission of Appeals it was held that no reversible error was shown in that argument, and the following remarks are quoted from the opinion in that case: "The counsel, in the argument, gave the reason why he criticized the testimony of this witness, which was that the witness was trying to make it appear that no injury had been inflicted upon the appellee. * * * Evidently it was in the mind of the counsel, in using the alleged objectionable statement in his argument, that it was difficult for a plaintiff in a damage suit to make out a case against the defendant when witnesses like Dr. Braswell would testify as an expert as he did. We see nothing objectionable in this argument, under the facts stated, since the counsel was discussing legitimate testimony introduced under the direction of the court. This is always allowable so long as the counsel confines himself to the record, and draws his own conclusions in his own way, from the testimony."

See, also, 3 Texas Jurisprudence, pp. 1260, 1261, from which we quote the following: "And it has been said that the abuse of argument by counsel is cause for reversal only where the preponderance of the evidence seems to be against the verdict, or where the verdict seems to be excessive and there is reason to believe that it may have been affected by the improper argument, for litigants are not to be punished for improprieties in the arguments of their counsel unless there is reason to believe that such conduct affected the merits of the case. In other words, in order to justify a reversal for improper argument the record must show at least some substantial probability that the argument affected, adversely to the losing party, the jury's verdict."

Also, 4 C. J. pp. 957–959; 2 R. C. L. pp. 414, 415.

Even though it should be said that in the argument complained of counsel erroneously interpreted the testimony of Dr. Stripling, and even though it could be further held that it was within the powers of the court to exclude it from the jury, yet, under all the facts and circumstances in evidence, we do not believe that the same was reasonably calculated to, and probably did, mislead the jury to appellant's injury; which, according to all the authorities, is the final and controlling test as to whether or not argument, even though in violation of rule 31, constitutes reversible error. Burrell Engineering Co. v. Grisier, 111 Tex. 477, 240 S. W. 899.

All assignments of error are overruled, and the judgment of the trial court is affirmed.