OUR LADY OF VICTORY COLLEGE & ACADEMY, Appellant,

v.

MAXWELL STEEL COMPANY, Appellee.

No. 15612.

Court of Civil Appeals of Texas.

Fort Worth.

April 15, 1955.

Rehearing Denied May 13, 1955.

1. Now rule 329–b.

Thompson, Walker, Smith & Shannon and Ogden K. Shannon, Fort Worth, for Union Tank & Supply Co.

**BOYD, Justice.**

Appellee Maxwell Steel Company, a corporation, contracted with appellant Our Lady of Victory College & Academy to dismantle a wooden water tank and install a steel tank of about twice the capacity of the wooden tank, upon the platform and tower on which the tank to be dismantled then stood. Having been engaged by appellee to do so, Union Tank & Supply Company furnished the materials and actually dismantled the old tank and installed the new tank. About four months after its installation, the tower collapsed and the tank fell to the ground. The tower and tank were destroyed, and considerable damage was done to a well house and some equipment therein.

Appellant sued appellee for its damages, and appellee impleaded Union Tank & Supply Company, asking for judgment over in the event appellant prevailed. The case was submitted to a jury and judgment rendered that appellant take nothing.

Appellant alleged that appellee agreed to inspect the platform and tower to ascertain whether they would support the larger tank; that no such inspection was made; that the failure to inspect was negligence and a proximate cause of appellant's damages; and in the alternative, that appellee knew that the officers, agents, and employees of appellant lacked the technical knowledge necessary to determine whether the existing tower was adequate, and knew that they relied on appellee's judgment as to its suitability; that appellee was capable of making that determination, and impliedly warranted to appellant that the tower would support the new installation; that the damage to the tower and tank was $2,500; to the well house, $4,900; to the equipment in the well house, $200; and further that owing to the collapse of the tower, appellant

Garrett & Garrett, and Rufus S. Garrett, Sr., Fort Worth, for appellant.

Crowley, Wright, Miller & Garrett, S. Allen Crowley and Kleber C. Miller, Jr., Fort Worth, for appellee Maxwell Steel Co.

was forced to purchase water at an increased cost of $550.

The jury failed to find that appellee agreed to inspect the tower, but found that its failure to make such inspection was negligence and a proximate cause of the damage; that Union Tank & Supply Company was negligent in failing to inspect the tower, and that such negligence was a proximate cause; that the actual value of the well house before the accident was $3,500; that the damage to the equipment in the well house was $120; and that the increased cost of water for appellant's establishment was $95.18.

By points of error, appellant contends that judgment should have been rendered for it on the verdict because appellee owed appellant the duty of erecting or having erected the new tank in a non-negligent manner, and that this duty was breached; that it was error to refuse its requested issues based upon appellee's implied warranty of the suitability of the completed structure for the purposes for which it was intended; and that it was error to exclude certain evidence offered by appellant.

The evidence shows that an October 29, 1951, appellee agreed to dismantle the wooden tank and install on the existing platform and tower a steel tank 15 feet in diameter and 8 feet high for $1,628.00; but appellant decided that it needed a larger tank, and on October 30, 1951, appellee sent the following commitment to appellant:

"Galvanized Steel—Corrugated Sheets—Bolted Construction—Water Tank erected on existing platform for the sum of TWO THOUSAND TWO HUNDRED TWO ($2202.00) DOLLARS.

"Tank to be 15'-0" Diameter x 16'-0" High (21,150 gal) type manufactured by Union Tank and Supply Co., and shall have a cone cover.

"This price includes disassembling the existing wooden tank and erecting the new steel tank."

It appears that appellee discharged its undertaking with appellant. It is not contended that appellee failed to have erected on the existing tower the kind of tank it agreed to have erected, or that there was any defect in the materials used or any negligence in the workmanship. The only negligence found was in the failure to inspect the tower.

To support its contention that inherent in appellee's contract was the obligation to inspect the tower and to ascertain if it would carry the increased weight, appellant cites many authorities, including Montgomery Ward & Co. v. Scharrenbeek, 146 Tex. 153, 204 S.W.2d 508, the holding of which epitomizes the holdings of the other authorities cited. In the Montgomery Ward case, the plaintiff's house was destroyed by a fire caused by a defective water heater which had been purchased from Montgomery Ward. The plaintiff asked said company to repair the heater and to put it in working order, which Montgomery Ward agreed to do; and, the warranty having expired, the plaintiff agreed to pay for the service. Montgomery Ward's repairman undertook to do the work, and the jury found that the house burned as a result of the repairman's negligence.

We do not think the rule announced in the Montgomery Ward case, and followed in the other cases cited by appellant, is applicable here. In our opinion, the true rule governing the instant case is that where a builder, who has been engaged to superadd to a structure already built, completes his work as contracted, according to plans agreed upon, he is not responsible for the subsequent destruction of the building caused by its own inherent weakness. 7 Tex.Jur., p. 570, sec. 26; Lonergan v. San Antonio Loan & Trust Co., 101 Tex. 63, 104 S.W. 1061; American Surety Co. of New York v. San Antonio Loan & Trust Co., Tex.Civ.App., 98 S.W. 387, and cases there cited; Duncan v. Cordley, 199 Mass. 299, 85 N.E. 160, 17 L.R.A.,N.S., 697; Reinhardt Construction Co. v. Mayor and City Council of Baltimore, 157 Md. 420, 146

A. 577; Poirier v. Zaidman, La.App., 192 So. 382; United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; Bentley v. State, 73 Wis. 416, 41 N.W. 338; Southgate v. Sanford & Brooks Co., 147 Va. 554, 137 S.E. 485; Clark v. Pope, 70 Ill. 128.

■ The installation was completed and was accepted and used for four months by appellant. No defect in material or workmanship was found. We do not think that appellee impliedly warranted the suitability of the tower, or the "completed structure" in so far as that term includes the tower and platform. It is immaterial that appellee may have known more about the carrying capacity of towers than did appellant. Appellant was under no disability to protect itself by stipulations. This court cannot add to or subtract from the engagements made by parties who are under no legal disability to contract.

■ Another point relates to the exclusion of testimony offered by appellant from the witness Sister Mary Evelyn. She testified by deposition, and was asked if she told appellee's witness Griffin that her one regret was that she intended to ask appellee to inspect the tower but neglected to do so. The portion of the answer admitted was, "Positively a falsehood; I had no such conversation with Mr. Griffin; in fact, it was the opposite." The portion that was excluded was, "So far as the inspection of the tower was concerned he said he would send someone out and we presumed it had been inspected, and I didn't say anything about being regretful in not asking to have it done. * * * I was putting it all on to them. He was getting out from under it, very positively. He tried to get out immediately from under it."

Some of the excluded testimony was unresponsive and some was a conclusion; the part material to the issue as to whether appellee had agreed to make the inspection was repetitious. When the witness said that "he said he would send someone out," she was not speaking of Griffin. She never talked to Griffin until after the accident.

And she was allowed to testify fully as to the conversation with appellee's representatives before the installation was made. She testified: " * * * So then Mr. Maxwell asked about this structure, the tower, and wanted to know if we knew what condition it was in. We said we didn't know and he said he would send somebody out to have it checked. So I didn't hear from them again for, oh, it must have been a week or ten days, and I finally called out there and talked to Mr. Parker and asked him when they were going to come out to see about the tank. He said 'We have already been out there.' So our conclusion certainly was that they had come to check the tower. * * * I called for Mr. Parker after that. The only conversation I had however was about when he coming out to check the tower.

"Q. You talked to Mr. Parker over the telephone about coming out and checking the tower? A. I asked him if he had been out. Mr. Maxwell said he would send someone out there. * * *

"Q. Now you have testified that in your conversation with Mr. Maxwell and Mr. Parker that the subject of the condition of the old existing water tower was discussed. A. Yes, sir.

"Q. Who brought that subject up for the first time? A. Mr. Maxwell.

"Q. Mr. Maxwell. And at that time you understood from the conversation that Maxwell Steel Company would send a representative out there to determine the condition of the existing tower? A. Very very definitely, and positively.

"Q. And on a subsequent conversation with Mr. Parker you understood that this inspection had been made? A. That was my understanding. When I asked him when they were coming out to see about the tank and tower he said 'We have been out there.' "

■ We do not think it was error to sustain the objection to the excluded testimony. It is proper to refuse to admit the

repetition of material testimony. Young v. Watson, Tex.Civ.App., 140 S.W. 840; Camp v. League, Tex.Civ.App., 92 S.W. 1062; Gulf, C. & S. F. Ry. Co. v. Hays, 40 Tex.Civ.App. 162, 89 S.W. 29.

Another assignment relates to testimony offered by appellant from the witness Crumley. The purpose was to impeach appellee's witness Griffin by showing that he had told Crumley that appellee's employee Auld had asked Nixon, an employee of Union Tank & Supply Company, if the old tower would support a tank of the proposed increased capacity, and that Nixon stated that it would. Auld had testified that he had no such conversation with Nixon, and that he had not told Griffin of any such conversation. Griffin testified that he did not tell Crumley that there had been any such conversation between Auld and Nixon. Crumley could not remember such conversation with Griffin. He had met Griffin in a cafe and talked to him about the accident; and shortly thereafter he dictated some notes in which he set down his "interpretation" of his conversation with Griffin; he examined the notes while on the witness stand, but his memory was not refreshed. He did not remember what Griffin had said. His notes, however, reflected that Griffin had said that Auld asked Nixon if the old tower would support the increased weight, and Nixon said that it would. In this state of the record, the court refused to permit Crumley to testify from the memorandum. We think error is not shown. McCormick and Ray, Texas Law of Evidence, p. 344, sec. 252. Moreover, Griffin testified that he had no personal knowledge of the transactions leading up to the engagement to erect the new tank, and his first knowledge of the transaction was obtained when Parker called him after the tower collapsed. Appellant does not contend that Griffin knew that Auld ever talked to Nixon. It appears that if Griffin did say that Auld and Nixon had such conversation about the tower, it was hearsay. Although Griffn was treasurer of appellee, he is not a party to this suit, and we do not think that the excluded testimony would involve an admission against interest.

We have considered all of appellant's points, but believe that reversible error is not reflected.

The judgment is affirmed.