**MEADOWS & WALKER DRILLING COMPANY, Appellant,**

v.

**PHILLIPS PETROLEUM COMPANY, Appellee.**

No. 25949.

United States Court of Appeals
Fifth Circuit.

Aug. 27, 1969.

Rehearing Denied and Rehearing En
Banc Denied Oct. 10, 1969.

Max H. Jennings, R. Philip Schulze, Houston, Tex., Clawson, Jennings & Delaney, Houston, Tex., of counsel, for appellant.

B. Jeff Crane, Jr., Vinson, Elkins, Weems & Searls, Houston, Tex., for appellee.

Before GOLDBERG and MORGAN, Circuit Judges, and LIEB, District Judge.

GOLDBERG, Circuit Judge:

This is an oil well blowout case. Appellant, Meadows & Walker Drilling Company (Meadows) instituted this suit in the district court of Harris County, Texas, seeking the recovery of $207,717.-15 for services and equipment rendered to Phillips Petroleum Company (Phillips) pursuant to a drilling contract. Meadows agreed under the contract to drill a well designated as Well No. 2 and located on the Tacquard "A" lease near Alta Loma, Texas. The contract required Meadows to furnish the necessary drilling rig, tools, machinery, appliances and labor, and contained a provision indemnifying the owner, Phillips, for all damage during drilling operations not resulting from the sole negligence of the owner.

Phillips removed the lawsuit to the United States District Court for the Southern District of Texas. Jurisdiction was based on diversity of citizenship. In its answer, Phillips admitted liability to Meadows in the amount of $47,069.97, but denied any further liability on the grounds that a blowout occurring at a depth of 1700 feet was caused by Meadows' negligence. Additionally Phillips asserted a counterclaim against Meadows in the sum of $178,-937.55 for equipment, chemicals and

services which it was forced to buy as a result of the blowout. The counterclaim prayed for a recovery against Meadows of $131,867.58—$178,937.55 less the admitted liability of $47,069.97. The case was submitted to a jury, and based upon its response to special interrogatories in which it found that Meadows had been negligent in failing to furnish drill pipe suitable for the purpose intended, and in misrepresenting the pressures such pipe would withstand, the district court rendered judgment for Phillips in the sum of $131,867.58. Meadows' motion for judgment n.o.v. and its motion for a new trial were overruled. Meadows appeals to this court.

Meadows first contends that the $47,069.97 awarded to it by the jury is without any rational basis in the evidence. It argues that invoices introduced in evidence early in the trial conclusively establish that it was entitled to $59,615.55 for services rendered. The discrepancy of $12,545.55 between the jury verdict and the amount allegedly established by the invoices is due, Meadows claims, to the fact that the jury disregarded the invoices and based its verdict instead on Phillips' admitted liability. Meadows requests a new trial on the grounds that "a jury does not have the power to render a capricious and arbitrary verdict in total disregard of the evidence * *." Gay, Sullivan & Co. v. Glasser, Crandell, Co., 1 Cir. 1939, 102 F.2d 149, 150. See also United States v. Simmons, 5 Cir. 1965, 346 F.2d 213; New Orleans & Northeastern Railroad Co. v. Hewett Oil Co., 5 Cir. 1965, 341 F.2d 406. We agree with the principle, but find it totally inapplicable to the case at bar.

The present suit was tried on the theory that Phillips owed Meadows $207,717.15 for services and materials *unless* the blowout which had occurred at Phillips' well was caused by Meadows' negligence. If such negligence were established, all parties conceded that the terms of the drilling contract exonerated Phillips for all damage caused by the blowout and all expenses incurred in restoring the pre-blowout depth of the well.

It was therefore absolutely incumbent upon Meadows to differentiate in its statements of costs between blowout and non-blowout expenses so that the latter could be recovered even if the former could not.

The invoices which Meadows introduced in evidence make no distinction between blowout and non-blowout expenses. While they do itemize services rendered on a day to day basis, such itemization does not establish which work was related to the blowout and which was not. It is entirely possible that some of the work performed after blowout depth was regained was nonetheless restorative of blowout damage. The jury could have believed that the discrepancy between Phillips' admitted liability and the amounts shown by the invoices was due to work relating to blowout damage, but performed after blowout depth was regained. Such inferences were well within the province of the jury. *Cf.* Gay, Sullivan & Co. v. Glasser, Crandell Co., *supra,* at 150.

■ We cannot say that the jury's verdict was arbitrary, capricious or in disregard of the evidence. In failing clearly to distinguish blowout and non-blowout expenses, appellant has failed to discharge its burden to demonstrate the extent of its claim. *Cf.* Harrington v. Texaco, Inc., 5 Cir. 1964, 339 F.2d 814, 821, cert. denied, 381 U.S. 915, 85 S.Ct. 1538, 14 L.Ed.2d 435; Tower Contracting Co. v. Flores, Tex.Civ.App.1956, 294 S.W.2d 266, 274, rev'd on other grounds, 157 Tex. 297, 302 S.W.2d 396.

■ The record also indicates that appellant seriously misled the jury and the trial court by its failure to object to the amount of Phillips' admitted liability. From the earliest pleadings filed in this suit, through the trial court's instructions to the jury and the return of its verdict, all persons understood that Phillips' admitted liability of $47,069.97 was for non-blowout related expenses. The trial court even instructed the jury that Phillips' admitted liability of $47,069.97 was "undisputed." The court's

instructions left the clear impression that $47,069.97 would be the correct amount owing to Meadows if the jury found Meadows responsible for the explosion. Despite these instructions, Meadows at no time during the trial contested the accuracy of Phillips' computations. Even on the motion for a new trial, Meadows did not bring the discrepancy to the attention of the trial court. It merely asserted that the verdict was insufficient as based on the admission and not the invoices, and then reiterated its fixed position that it was entitled to its total expenses to date of $207,717.55. The trial court in denying this motion could not possibly have understood that Meadows was claiming a discrepancy between Phillips' admitted liability and the pre-blowout and post-blowout expenses described in the invoices. Under these circumstances Meadows is not entitled to become the beneficiary of its own dilatory and ambiguous tactics.

> "It is a rule of law so old that the memory of man runneth not to the contrary that one may not sit by without objection to rulings or instructions, and then after verdict and judgment, and when it is too late for the court to change its rulings or charge, come forward with objections on appeal and seek to put the court in error." Western Fire Ins. Co. of Fort Scott, Kan., v. Word, 5 Cir. 1942, 131 F.2d 541, 543.

Meadows next complains of the admission into evidence of photographs of pipe samples allegedly taken from the well. Appellant challenges the admissibility of the photographs on the grounds that Phillips never adequately established that the pipe samples depicted in the photographs originated in the blowout well, or even if they did, that they were adjacent to the point of rupture. Since the pipe samples portrayed in the photographs were subjected to expert examination that showed the pipes to be unsuitable for drilling at certain pressures, the photographs and the testimony of experts based thereon were relevant to the issue of Meadows' negligence only if they had reference to pipes actually used by Meadows & Walker in the blowout well at or near the point of rupture. Pipes from any other source would be both irrelevant and prejudicial. Cf. R. T. Herrin Petroleum Transport Co. v. Proctor, 1960, 161 Tex. 222, 338 S.W.2d 422, 432.

We hasten to add that the issue raised by appellant is one of identification of the object depicted, and not one regarding the "sufficiency of the preliminary proof to show the correctness of a photograph * * * ." Kortz v. Guardian Life Ins. Co., 3 Cir. 1944, 144 F.2d 676, 679. See also Alford v. New York Central Railroad Company, 7 Cir. 1964, 339 F.2d 1019; Jenkins v. Associated Transport, Inc., 6 Cir. 1964, 330 F.2d 706, 710; Pritchard v. Downie, 8 Cir. 1964, 326 F.2d 323 326; Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co., 10 Cir. 1958, 257 F.2d 93, 99; Moore v. Louisville & Nashville Railroad Company, 5 Cir. 1955, 223 F.2d 214, 215 n. 1 and 216. We do not understand appellant to challenge the accuracy of the photographs as representative of the pipe samples tested,[1] but simply whether the pipe samples portrayed by the photographs are relevant to the case at hand. See J. H. Wigmore, Wigmore on Evidence § 792(1) 3rd ed. (1940). The evidence shows that they are.

The two lengths of pipe portrayed in Phillips' photographic exhibits have two separate genealogies, but both were traced to the well and were placed near or at the point of rupture. One of the pipes was extracted from the well following the explosion by a process called "fishing." Mr. C. A. Lively, summoned to the well site after the explosion, testified that he cut off and retrieved the top twenty feet of the drill stem that was still left in the well. This would necessarily be pipe about 1700 feet down in

---

1. Phillips' expert witnesses testified that the photographs were accurate representations of the samples they had examined.

the well and adjacent to the point of rupture. Mr. Lively testified after examining Phillips' photographs that he believed one of the pipes depicted therein was the same pipe he had brought up from the well, but he could not swear to that fact. His identification was made on the basis of markings left on the pipe by a tool called a clusterite mill. *Cf.* Jenkins v. Biershenk, 10 Cir. 1964, 333 F.2d 421, 425. The markings were clearly visible in the photograph.

The other pipe sample depicted in the photographs was discovered some twenty-five feet from the well shortly after the explosion. This fact was established by two of Phillips' witnesses. While neither witness could claim that he caught the tubing piping hot as it blew out of the well, both saw the pipe in the immediate vicinity of the well shortly after the explosion and both were reasonably certain that the pipe originated there. This belief was confirmed by the fact that the immediate area around the well was free of pipe joints prior to the explosion and was also confirmed by the damaged condition of the samples. One of the witnesses testified that by counting 'and measuring pipe joints, he could place the pipe sample at or near the blowout depth of 1700 feet.

■■ We have no doubt that the above testimony sufficiently identifies the pipe samples as originating in the well to make photographs of them admissible into evidence. See Jenkins v. Biershenk, *supra;* J. R. Hanify Co. v. Westberg, 9 Cir. 1926, 16 F.2d 552, 553–554; Brown v. Kirksey, Tex.Civ.App.1940, 145 S.W.2d 217, 218; United States Torpedo Co. v. Liner, Tex.Civ.App. 1927, 300 S.W. 641, 645, reversed, Tex. Com'n App.1929, judgment adopted, 12 S.W.2d 552, affirmed on rehearing, Tex. Com'n App.1929, judgment adopted, 16 S.W.2d 519; St. Louis Southwestern Ry. Co. of Texas v. Brazelton, Tex.Civ.App. 1927, 290 S.W. 825, 826, reversed on other grounds, Tex.Com'n App.1929, judgment adopted, 296 S.W. 290; Gulf, C. & S. F. Ry. Co. v. Boyce, 1905, 39 Tex. Civ.App. 195, 87 S.W. 395, 398 (writ ref'd). The admissibility of demonstrative evidence is largely within the discretion of the trial judge. Sedlack v. General Motors Corporation, 7 Cir. 1958, 253 F.2d 116; Western Cottonoil Company v. Pinkston, Tex.Civ.App.1955, 279 S.W.2d 150, 151. Determining whether or not an article has been properly identified is an exercise of that discretion, J. R. Hanify Co. v. Westberg, *supra*; 32 C.J.S. Evidence § 602, and will not be disturbed unless there is no competent evidence in the record to support it. See Pilot Life Ins. Co. v. Wise, 5 Cir. 1932, 61 F.2d 481, 483; R. T. Herrin Petroleum Transport Co. v. Proctor, 1960, 161 Tex. 222, 338 S.W.2d 422, 432. We conclude that the evidence in the case before us was ample to sustain the trial court's decision.

■■ Meadows' third claim of error relates to the exclusion by the district court of testimony by two expert witnesses. The record clearly shows that the judge refused this testimony on the ground that the witnesses proffered by Meadows were prepared to give the same testimony already introduced by Phillips. It is well established that evidence which is merely repetitious and cumulative of testimony already introduced may be excluded by the court. Finn v. Wood, 2 Cir. 1950, 178 F.2d 583; Our Lady of Victory College & Academy v. Maxwell Steel Co., Tex.Civ.App.1955, 278 S.W.2d 321 (writ ref'd n. r. e.). Exclusion in the present instance was therefore proper.

■■ Appellant's final claim of error consists of a broad based attack on the jury's findings of negligence and proximate cause. Meadows first contends that there is evidence in the record that the blowout was caused by factors other than defective drill pipe. Since there is no eyewitness who could testify unequivocally to the cause of the explosion, Meadows argues that the jury's determination of proximate cause and negligence was purely speculative. This argument is untenable. Negligence and proximate cause may be proven by circumstantial evidence. Texas & Pacific

Ry. Co. v. Midkiff, Tex.Civ.App.1955, 275 S.W.2d 841. The resolution of conflicting evidence as to proximate cause and negligence is a matter for the jury. Ft. Worth & Denver Railway Co. v. Threadgill, 5 Cir. 1955, 228 F.2d 307, 311; Texas & Pacific Ry. Co. v. Midkiff, *supra*. If there is any evidence from which a jury might properly have found proximate cause and negligence, such finding is binding upon a reviewing court. Ft. Worth & Denver Railway Co. v. Threadgill, *supra;* Texas & Pacific Ry. Co. v. Midkiff, *supra*. Appellant's only cited case on this point, Medina v. All American Bus Lines, 5 Cir. 1945, 152 F.2d 61, appears inapplicable since the court there held that a page by page search of the record showed that the causes of the collision had been left completely unexplained. Such is not the case here. Several metallurgical experts testified that the pipe used by Meadows was well below API specifications for grade E pipe. The pipe samples examined by these experts showed a rupture of the metal fibres normally associated with collapse from excessive external pressure. Phillips' experts diagnosed the cause of pipe failure as the lack of uniformity in the thickness of the pipe wall resulting in overstress on the thin portions of the pipe. In addition, there had been three pipe failures during drilling operations prior to the explosion. On this evidence the jury was more than justified in finding both negligence and proximate cause. The Boeing Co. v. Shipman, 5 Cir. 1969, 411 F.2d 365.

■ The jury was also justified in resolving the issue of contributory negligence against the appellant. See Texas & Pacific Railway Co. v. Midkiff, *supra*. The question of whether Phillips was contributorily negligent in not supplying a Halliburton high pressure mud pump for drilling operations, and in not closing the Cameron pipe ram blowout preventers in time to prevent the explosion was for jury resolution. The evidence on these points was conflicting. The jury's decision will therefore not be disturbed on appeal.

Finally, appellant argues on the basis of United States v. Schultetus, 5 Cir. 1960, 277 F.2d 322, cert. denied, 364 U.S. 828, 81 S.Ct. 67, 5 L.Ed.2d 56, that whatever duty of due care it had to Phillips under the drilling contract was discharged when Meadows' agent, Mr. Miller, gave warning to Phillips' agent, Mr. Holtzapple, just prior to the blowout. This warning apparently consisted of an expression of doubt concerning the durability of the pipe Meadows had furnished for the drilling operation:

> MR. MILLER. "I looked in a catalog that Continental-Emsco puts out on pipe. I looked at the pressure on it and I told him that it was used pipe and I didn't know if the drill pipe would stand this pressure or not, but I thought that it would."

The above remarks hardly constituted an unequivocal warning to Phillips' employees at the drilling site. If anything, they amounted to a qualified statement of opinion that the pipe would withstand greater pressures than the 4,225 pounds indicated by the last well measurement prior to the blowout. There is thus no comparison between this situation and the unequivocal warning given in United States v. Schultetus, *supra*.

Of more importance, however, is the fact that in United States v. Schultetus, *supra,* the primary responsibility of the government as operator of an airport control tower was to warn pilots of dangers likely to cause collision. The court parsed the government's warning only to determine if this primary obligation had been met. Once it was established that the government's warning complied with CAB regulations, the government's obligation to pilots using its facility was discharged.

■ Here Meadows' duties had nothing to do with warning. Meadows was simply required to furnish drill pipe suitable for the operation it had undertaken to complete. The jury found that Mead-

384

ows failed to fulfill this obligation and accordingly the court awarded judgment for Phillips. While the warning might initially have had some bearing on the issue of contributory negligence, this was the extent of its relevance. When the jury found that Phillips was not contributorily negligent "in ordering the working of the drill pipe just before the blow out in question," even that argument was foreclosed. Under these circumstances we conclude that the court properly entered judgment for Phillips and that appellant has no sound basis for complaint.

The judgment of the district court is Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.