## ANDING v. BYRD–HARMON DRILLING CO., Inc.

### No. 5640.

Court of Civil Appeals of Texas. Texarkana.

June 21, 1940.

Rehearing Denied June 27, 1940.

Hill & Bath, of Henderson, for plaintiff in error.

Weeks, Hankerson & Potter, of Tyler, for defendant in error.

WILLIAMS, Justice.

The oil wells situated on a 5-acre leasehold estate in Rusk County, owned by A. F. Anding, plaintiff below, having been drilled too deep, ceased producing oil. To recondition or plug back, so as to cut off the salt water, required the services of a cable tool rig to pull or lift the tubing; a derrick to which the cable tool rig is attached; and equipment to pump cement down through the tubing. · Byrd-Harmon Drilling Company, Inc., ·defendant below, owner and operator of a standard cable tool rig, was employed by plaintiff to furnish certain labor and operate its rig in plugging back above wells at a scale of $150 for each 24-hour day's service. Plaintiff furnished and erected a derrick to be used by defendant in this operation. The Independent Oil Well Cementing Company was employed by plaintiff to do the required cementing.

Each well was equipped with two-inch tubing run inside a seven-inch casing to a 3,700-foot depth. Well No. 2, which was reconditioned last, was plugged back without any trouble. Defendant proceeded to and did pull the tubing from well No. 1 with its rig, and cleaned the hole out to the depth designated by plaintiff's foreman. It then let down and ran new tubing in the casing. The cement contractor proceeded then to do a "squeeze cement job," that is, pumped down through the tubing sufficient cement calculated to rise 100 feet between the casing and tubing from the bottom. Then the cementing contractor instructed defendant to lift the tubing up to the desired height to "cut off the plug." Defendant proceeded to lift the tubing with its rig.

The top of the tubing had been raised two or three feet when the derrick shook and pulled in. Various efforts, to no avail, were made to pump the cement out and to pull the tubing before the cement set. Approximately 100 feet of tubing became cemented in the hole. As a result, additional time, labor and equipment were required and expended by both plaintiff and defendant to eliminate this condition and to complete the original undertaking.

Prior to institution of this suit defendant had filed in the county clerk's office, within the statutory time, a materialman's and laborer's lien against the ⅞ leasehold of plaintiff in the sum of $9,242.70 for services performed and material furnished on both wells. This suit by plaintiff was basically to have adjudged that he was not indebted to defendant as claimed by it, and for cancellation of the statutory lien so filed. In addition, plaintiff sought damages for added expenses incurred by him in removing the cemented tubing. Defendant answered with a general demurrer, denial, and special exceptions. In his cross action defendant sought recovery for its claimed indebtedness and for foreclosure of its statutory lien.

After the derrick had been erected by plaintiff, and prior to any operation, defendant removed from the derrick a "bull wheel girt" or "I-Beam." Plaintiff contended in his pleadings and offered evidence in support thereof that the collapse of the derrick permitted the tubing to drop back and stick in the hole so it could not be removed before the cement set around it; and the collapse of the derrick was due to the negligence of defendant in removing the "bull wheel girt." Defendant, on the other hand, contended and offered evidence in support thereof, that the tubing had become stuck during the cementing operations, a hazard inherent in such an operation; that the cementing of the tubing was not due to the collapse of the derrick; that the collapse of the derrick was due to the fact that the tubing had become stuck, thus throwing an unusual pull on the derrick. In response to special issue No. 1, the jury found that defendant was not guilty of negligence in removing the "bull wheel girt" or "I-beam." To No. 25 the jury found that "the event of cementing the tubing in the well was the result of an unavoidable accident." Other jury findings, which are not attacked, dealt with the number of days of service rendered and special equipment furnished or installed by defendant in the operations, and certain expenses incurred and expended by plaintiff. Upon findings No. 1 and 25, together with findings as to specific days of service and special equipment furnished by defendant, the court entered judgment that plaintiff take nothing, and awarded defendant recovery on its cross action in the sum of $9,122.20 with foreclosure of its lien on plaintiff's ⅞ leasehold estate.

Plaintiff, under his first five propositions, asserts that the evidence is insufficient to support the jury's verdict to issues No. 1 and No. 25. The two issues are largely controlled by the same evidence and so treated by plaintiff in his brief. At the time the derrick collapsed the rig had lifted the tubing between two and three feet. Plaintiff offered evidence that this was proof that the tubing was not stuck when the pull began. Defendant's witnesses testified that this two or three feet was due to the stretch in the pipe; that this was a common happening in a 3,700-foot string of pipe. A "6-hour cement," a slow-setting cement, had been furnished the cementer by plaintiff. Within less than four hours a casing-pulling machine (made up of hydraulic jacks) in an effort to pull the tubing pulled it in two. Defendant offered evidence that the jacks were stronger than the derrick, and other testimony that this confirmed the claim that the tubing was stuck at the time the derrick collapsed. Plaintiff countered with evidence that the fall of the derrick permitted the tubing to drop back and stick; the sudden drop to twist and bend the tubing. That this prevented the hydraulic jacks from lifting it. To refute this, defendant offered evidence that the tubing had been equipped with Guiberson spiders and slips, a device which worked automatically, designed to permit tubing to be lifted from a hole and prevent tubing from slipping back. A long knife or cutting machine was used to cut a part of the tubing. Defendant offered evidence that if the tubing had been bent, the knife could not have been used. There is evidence that the Guiberson spider had not been properly adjusted. Much of the evidence consisted of the opinions of witnesses, based upon their experiences in the oil fields, for necessarily what transpires 3,700 feet under the ground must rest to a great extent upon such character of testimony. The record discloses that undertakings such as this are of a hazardous nature, to such an extent that this work is

done only on a per diem basis. There is evidence that the removal of the I-beam weakened the derrick; that this caused it to topple over; and that the derrick bent or caved in at or near where the beam had been removed. There is also evidence that this beam is not installed to support a derrick but to permit certain type of machinery to be attached in certain operations; that in late times such beams were not installed because of the discontinuance of use of such machinery. According to some of the testimony a pull as here is done at a slight slant, and the sticking of the tubing caused such an unusual load to pull the derrick from its concrete fastenings; that gosset plates used in bracing the legs of the derrick had been inserted in reverse by the builder, and this caused the derrick to buckle; and that the derrick was strong enough to pull all the tubing set in packing preparatory to cleaning out the hole. Above brief resume of a voluminous record, much technical, discloses that the respective claims were controversial. After a careful study of this record, the conclusion is not to be reached that the evidence is insufficient to support the jury's findings. 3 Tex.Jur. 1096, Secs. 768, 769; 20 R.C.L. p. 19; E. L. Martin Inc. v. Kyser, Tex.Civ.App., 104 S.W.2d 592; Community Natural Gas Co. v. Lane, Tex.Civ. App., 133 S.W.2d 200; Rosenthal D. G. Co. v. Hillebrandt, Tex.Com.App., 7 S.W. 2d 521; Western Assur. Co. of Toronto v. Busch, Tex.Civ.App., 203 S.W. 460, and authorities there cited.

As we interpret the remaining propositions, plaintiff contends that the court erred in entering judgment with foreclosure of lien on defendant's cross action, in that from the undisputed evidence defendant merely made a demand to plaintiff of an account due of $8,315.20 and thereafter filed a lien for said services and sued for $9,242.70, and the judgment rendered was in excess of the original account presented. The undisputed evidence shows that in February, approximately two months after the reconditioning of well No. 1 and about six weeks after the work on No. 2 had been completed, defendant made request by mail for payment and gave notice that the lien would be filed if not promptly paid. A summarized statement of the account then enclosed called for $2,-716.70 due for services on well No. 2, and $5,598.50 on No. 1. In March defendant filed a materialman's and laborer's lien. This was itemized and called for a total of $9,242.70 for which defendant sued. The judgment entered was for around $100 less than the amount sued for.

Above letter written in February containing the first account contains a paragraph reading: "You have been fully advised from time to time the urgency of our need for at least a part of the money due us. We have been unable to make any collection whatever, or even to get a definite idea of when we might expect a settlement." In plaintiff's amended pleadings upon which he went to trial, he alleged, "but that during all of said time defendant claimed compensation from the plaintiff, though no beneficial work was done by the defendant, at the rate of $150 per day, which was not just and reasonable and for which this plaintiff has refused to pay." This would not support plaintiff's claim that the first account rendered was an account stated, 1 Tex.Jur. p. 371, 1 C.J.S., Account Stated, § 1, p. 693, for such evidence does not import an agreement or acceptance by plaintiff, there being no evidence to the contrary.

The first account rendered was evidentiary to be considered by the jury in conjunction with the correctness of the subsequent account. In this connection plaintiff claims defendant padded the account to cover costs of collection. Defendant's evidence on this phase is to the effect that charges were not made for full time on certain days in the first account rendered. That when it became patent that suit would be necessary, the full time was included in the itemized account with the lien so filed. And in support of its latter claim offered the daily driller's reports and timetables. This evidence presented a question of fact for the jury. If the first account rendered had been an account stated, it would have constituted only prima facie evidence of the charges for the service. Dodson v. Watson, 110 Tex. 355, 220 S.W. 771, 11 A.L.R. 583.

The judgment is affirmed.