**T. A. HAMILL, Appellant,**

v.

**George D. BURLESON, Appellee.**

No. 6385.

Court of Civil Appeals of Texas.

Amarillo.

Dec. 27, 1954.

Rehearing Denied Jan. 31, 1955.

Crenshaw, Dupree & Milam, Lubbock, and Allison & Allison, Levelland, for appellant.

R. H. Munsterman, Levelland, for appellee.

MARTIN, Justice.

Appellee, George D. Burleson, plaintiff in the trial court, sued appellant, T. A. Hamill, on a sworn account in amount $8,256.98 alleged to be due for equipment and labor furnished to appellant by appellee in attempting to clean and re-work an oil well owned by the appellant.

Appellant stipulated in the trial court as to appellee's sworn account that "such hourly wages and charges, as set forth in said affidavit, are reasonable and proper, and that the same are the usual and customary charges for such services and labor as performed in Hockley County, Texas on the dates therein set forth; that such account aggregates the sum of $8,256.98; * * * and that thereafter demand was made on the defendant for payment of such account in full, which demand was refused; all of such stipulations without prejudice to any other defenses to be asserted by the defendant herein."

Appellant asserted two defenses in the trial court. One of appellant's defenses was that appellee was negligent in dropping tubing in the oil well and thereby destroying the same. The other defense asserted by appellant is that appellee agreed with appellant that appellee "would pull the tubing, run the tubing and set a pump on the Hamill No. 2 well". Appellant further alleged that since appellee failed to perform such contract that he could not recover. Appellant states in his brief that if appellant is not entitled to a judgment, the cause was tried on a wrong theory. Such statement evidently refers to appellant's asserting the non-performance of a contract as a defense to a sworn account.

It does not appear that there could be any merit to appellant's asserting non-performance of a contract as a defense to appellee's sworn account since appellant stipulated that the account items were reasonable and proper and that the charges therefor were the usual and customary charges for such services and labor as performed in the aggregate amount of $8,-256.98. However, in the present state of the record, the court is not required to pass on this rather unique issue. In answer to Special Issue No. 7, the jury found that appellant and appellee agreed that appellee, acting by and through his agent, Gene Isbell, "would pull the tubing, run the tubing, and set a pump on the Hamill No. 2 well". In answer to Special Issue No. 12, the jury further found that appellee failed to carry out such agreement. It is recognized that had appellee sued appellant on a contract between the parties, he could not recover on proof of his non-performance of the same. But, the ruling of the trial court presents a different issue to that of non-performance of a contract as revealed by appellant's first and second points hereinafter discussed.

■ The trial court set aside the jury verdict as to Special Issues Nos. 7 and 12 and specifically found in his judgment that there was no evidence to support such jury findings and that the evidence was wholly insufficient to support such findings. Appellant's first and second points of error assert that the trial court erred in setting aside and disregarding said Special Issues Nos. 7 and 12 as there is "ample evidence" to support such findings. An examination of the two volume statement of facts reveals no testimony as to any discussion or conversation between appellant and the appellee in regard to the making of the parol contract as asserted by appellant. Nor does the record reveal any discussion of a contract between appellee's agent, Isbell, and the appellant. The record reveals that appellee's agent, Isbell, moved appellee's rig on appellant's premises, not by reason of any contract with appellant, but "according to appellant, Western Drilling Company got appellee's outfit to move on

the job". It is further noted from appellant's brief and from an examination of the statement of facts that the principal testimony upon which appellant must rely to support the jury finding of a contract is as follows: Appellant testified as to certain facts with reference to appellee running a cement block at the well to hold the pump and as to appellee pulling the tubing out of the well. Appellant further stated that appellee's agent "had to set the pump and run the tubing back in". Following these statements, the record reveals the following testimony of appellant:

"Q. Is that what he agreed to do?
A. Yes, that is what he agreed to do."

There are other fragmentary statements of this nature in the record, governed by the rule herein discussed, but it is apparent that appellant must rely principally on this statement as a sufficient basis for the jury finding as to an agreement being entered into between the parties. The above statement by appellant will not support the jury verdict as a matter of law. "A contract cannot be established by evidence of a conversation in which a party states mere conclusions". 17 C.J.S., Contracts, § 604, p. 1256; 19 Tex.Jur., Expert and Opinion Evidence, Syl. 227, Contracts, page 350; Terry v. Witherspoon, Tex.Civ.App., 255 S.W. 471, Syl. 4, 5 affirmed Tex.Com.App., 267 S.W. 973, second case; Gate City Roller Rink Co. v. McGuire, Tex.Civ.App., 112 S.W. 436, at page 439.

■ The application of the above principle of law to appellant's testimony, which is the only testimony pertaining to a contract or agreement between the parties, will sustain the ruling of the trial court that there was no evidence to support the jury answers to Special Issues Nos. 7 and 12. But, many other facts and elements revealed by the record wholly support the action of the trial court. Fully supporting such ruling of the trial court is appellant's own stipulation conceding the verity of the sworn account. Also sustaining the ruling of the trial court are the pleadings filed by appellant in the cause of action. Appellant conceded in his pleadings that appellee was

to swab the well and then appellant plead the following:

"*.*. * the defendant entered into a second agreement with the plaintiff, under the terms of which the plaintiff agreed to furnish all of the necessary equipment and labor to pull the tubing, install a pump and replace the tubing in consideration for which the defendant agreed to pay plaintiff the *reasonable, customary charge and value of such service.*" (Emphasis added.)

This same clause is likewise found in appellant's cross-action as filed in the cause. It is hardly necessary to point out that an agreement to furnish the necessary equipment and labor to pull the tubing is not an unconditional agreement to pull the tubing. Nor does the statement that defendant agreed to pay plaintiff the reasonable, customary charge and value of such services comport with appellant's theory of the existence of an entire contract with a single consideration. "One of tests of severability of a contract is whether consideration is apportionable." Simms-Wylie Co. v. City of Ranger, Tex.Civ.App., 224 S.W.2d 265, Syls. 3, 4; 17 C.J.S., Contracts, § 334, p. 790.

■ The testimony of appellee's agent, Isbell, as to the nature of the services to be performed and his denial of the making of any entire contract will not be detailed as the evidence must be considered in the light most favorable to the party in whose favor the issues were answered. Further supporting the trial court's judgment, the jury found as to the work performed following the dropping of the tubing in the well, that appellant was "to pay for all work, labor and material furnished by plaintiff, Burleson, *after the accident* in question on June 13, 1950". It is also noteworthy that all other equipment and labor furnished by other parties to appellant were furnished solely on an hourly basis and not under an entire contract. Since there is no evidence to support the jury findings under Issues 7 and 12, the trial court did not err in setting aside such findings of a specific contract and appellee's failure to perform the same. Appellant's First and Second Points are overruled.

■ Appellant's second defense is that appellee's agent, Isbell, was negligent in dropping the tubing in the oil well and thereby ruining the well and that the consequent damage arising from such negligent act should offset appellee's sworn account. On this issue, the jury not only found that the tubing would have been dropped if appellee and his employees had used ordinary care but the jury further found specifically on this issue that the tubing was not dropped into the hole by the negligence of George D. Burleson or his employees. The jury likewise found that the dropping of the tubing was the result of an unavoidable accident. Finally, the jury found that appellant furnished appellee with both defective tubing and defective casing and that such was a proximate cause of the accident whereby the tubing was dropped. In fact, all jury answers supported appellee's cause of action other than Issues 7 and 12 above discussed and issues ancillary thereto. The evidence in the record is sufficient to support the jury findings as to appellant furnishing defective tubing and casing and appellant's Seventh Point of Error as to the insufficiency of the evidence to support such findings is overruled. The jury findings likewise establish appellee's cause of action as against appellant's defense asserting that appellee was negligent in dropping the tubing in the well. Big Six Oil Co., Inc., v. West, Tex.Civ. App., 136 S.W.2d 950; Anding v. Byrd-Harmon Drilling Co., Inc., Tex.Civ.App., 141 S.W.2d 1018.

Appellant's other points of error are with reference to issues which are merely ancillary to the controlling issues above ruled upon and such points need not be discussed here. Appellant's Points of Error are overruled and the judgment of the trial court is affirmed.