TOWER CONTRACTING COMPANY, INCORPORATED, OF TEXAS V.
HUNTER FLORES, D.B.A. FREEPORT MACHINE & BOILER SHOP

No. A-6106. Decided May 15, 1957.
Rehearing overruled June 12, 1957.
(302 S.W. 2d Series 396.)

298

*Bell, Camp & Gwin, Lawrence P. Gwin* and *C. R. Bell,* both of Bay City, for petitioner, Tower Contracting Company.

*Turner, Rodgers, Winn, Scurlock & Terry* and *Frank J. Scurlock,* all of Dallas, for respondent, Hunter Flores.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is primarily a suit for "extras" incident to a subcontract relating to the repair of the Colorado River Flood Gates on the Intercoastal Waterway in Matagorda County. The contracting parties were Hunter Flores and Tower Contracting Company. A district court judgment favorable to Flores was reversed by the Court of Civil Appeals and the cause remanded to the trial court for further proceedings. Tower Contracting Company v. Flores, 294 S.W. 2d 266. Both Flores and Tower filed applications for writs of error, Tower's complaint being based primarily upon the terms of the remand. Tower's application being granted, we also granted Flores' application thus bringing the entire case before us. As the parties occupy dual positions in this Court they will be designated by name.

Both Tower and Flores submitted bids for repair work upon the flood gates in accordance with the plans and specifications of the Army Corps of Engineers. Tower was the successful bidder and thereafter sublet certain portions of the work to Flores. We are here concerned with Items Nos. 4 and 7 of the subcontract which was an informal agreement between parties presumably familiar with the nature of the work called for in the plans and specifications upon which the prime contract was based. This instrument is set out in full as an exhibit to the opinion of the Court of Civil Appeals (294 S.W. 2d 276) and need not be repeated here. It is sufficient for our present purposes to set forth the pertinent provisions of the subcontract, together with the applicable clauses of the technical provisions of the plans and specifications.

Item No. 4 of the subcontract reads as follows: "Removal and Reinstallation of Rotten Timber Fenders.

"According to Technical Provisions, Section 5. Paragraph

5-03, 5-04(a), Timber Only—All new timber shall be furnished on job site by Prime Contractor; (c) bolts and nuts—(1) Galvanizing: 5-05, 5-06, Steel Plate only. Prime contractor shall deliver one steel plate for guide wall to be installed by subcontractor * * * $330.00 per M. feet * * * approximately 28,000 board feet, * * * $9,200.00."

The following are the technical provisions of the plans and specifications referred to in Item No. 4 of the subcontract:

"5-03: Removing existing timbers. All damaged and/or rotten timbers shall be removed to the extent shown on the drawings and/or as required, and shall be replaced with new treated pine timbers as specified. Timbers that cannot be readily removed may be cut when approved. All bolts shall be removed by unscrewing the nuts, and nuts and washers shall be replaced on the bolts. Where bolts and nuts are so badly rusted that the nuts cannot be started, removal by cutting will be permitted. All timbers and bolts removed from guidewalls and determined unsalvageable shall become the property of the contractor and shall be completely removed from the site of the work.

"5-04: Materials.

"(a) *Timber*. All new timber shall be straight, even sawed, sound, and entirely free from all defects which might impair its durability or its usefulness for the purpose intended. Timbers shall bear the official grade mark of the Association under whose rules it is purchased, or in lieu thereof, each shipment shall be accompanied by a certificate of inspection issued by the inspection association, subject in either case to the requirements of Federal Specification MM-L-751c for 'Lumber and Timber, softwood.' Treated timbers shall be accompanied by a certificate from a recognized treatment company, certifying the amount of treatment and the percentage of moisture after kiln drying.

"(b)  (Relates to preservatives.)

"(c) *Bolts and nuts*. Steel for bolts and nuts shall conform to the requirements of Federal Specification FF-B-571a, for 'bolts, nuts, studs and tap rivets (and material for same.)' Bolts and nuts shall be galvanized, and of the type, size, and dimensions indicated on the drawings.

"(1) *Galvanizing*. All bolts and nuts shall be hotdipped galvanized in accordance with ASTM Designation A123-47.

"(d) (Relates to structural steel.)

"5-05. *Timber installation*: Timbers shall be carefully framed and/or sawed and scarfed to fit the work in place and then shall be bolted in final position by use of galvanized U-bolts. Bolts for fastening the timbers to other timbers and to the supporting piles shall be galvanized bolts, size and length as required. Timbers shall be notched not more than 1" to insert the U-bolts for attaching timbers to piles as indicated on the drawings. Joints shall have full bearing over entire surfaces without blocking or shimming.

"5-06. *Steel Plates.* The contractor shall furnish and install one steel tangent plate of the size and dimensions and at the appropriate location shown on the drawings. The damaged steel plates on the north canal side guide wall of West gate shall be removed and replaced with a new steel plate. Steel for plates shall conform to requirements of paragraph 5-04d."

The subcontract also contained the following provision which referred to the overall price set for the performance of the work contemplated by the contract and hence was applicable to all of the items contained in the agreement:

"The above price includes all necessary tools, equipment, fuel, scaffolding and any and all other materials, equipment and labor necessary to complete the above work according to plans and specifications for the maintenance and repair to the East Floodgate, Matagorda Locks."

■ We agree with the holding of the Court of Civil Appeals that the subcontract and the technical provisions referred to therein must be considered together, E. H. Perry & Co. v. Langbehn, 113 Texas 72, 252 S.W. 472, and that when so construed no ambiguity appears. Flores claimed that the furnishing of the necessary bolts and nuts for the work and the galvanizing thereof were not covered by the subcontract and hence constituted "extras." The trial court awarded him a recovery of $2,986.19 for these items. Any uncertainty which might arise from a consideration of the subcontract by itself is removed by the obvious references to the specific clauses of the technical provisions of the plans and specifications. The sub-contract contains an exception to Section 5-04(a) of the technical provisions in that it provides that all new timber shall be furnished by the prime contractor. This circumstance, however, forms no

basis for a contention that there is a like exception applicable to Section 5-04 (c) which relates to bolts and nuts and galvanizing. The agreement being unambiguous, the meaning thereof is determined as a matter of law by the language used therein. Lewis v. East Texas Finance Co., 136 Texas 149, 146 S.W. 2d 977; Universal C.I.T. Credit Corp. v. Daniel, 150 Texas 513, 243 S.W. 2d 154, and the Court of Civil Appeals correctly so held.

■ We are likewise in agreement with the Court of Civil Appeals as to the proper construction of the contractual provisions concerning Item No. 7, which related to the refilling of a gap cut in the levee on one side of the river channel so as to by-pass the flood gates in order that they could be repaired. In the notice to bidders, the Army engineers estimated the yardage necessary to repair the cut in the levee at 22,000 cubic yards. Tower's successful bid was made upon a cubic yard basis, however the subcontract between Tower and Flores provided for a lump sum payment; the exact terms of the subcontract relating to Item No. 7 being as follows:

"Fill — Lump sum — $8,250.00 — Fill shall be in accordance with technical provisions, Section 1, Paragraph 1-04 and in accordance with site plan No. 1.1."

The basis of the claim as an extra is the circumstance that the estimate of the Army Engineers contained in the notice to bidders was not accurate and that it was necessary to place some 32,248 cubic yards of earth in the levee to close the gap rather than the estimated 22,000 cubic yards. This is not a suit in equity to cancel or reform a contract based upon a unilateral or mutual mistake of fact, i.e., the amount of earth necessary to fill the gap in the levee. Clearly under the subcontract, Flores agreed to fill the gap. He expressly agreed to do so for a lump sum payment of $8,250.00. He accordingly elected to gain or lose, depending upon whether the Army engineers' preliminary estimate ultimately proved to be an over estimate or an under estimate.

Tower contested not only Flores' claim to extras in connection with Item No. 7 of the subcontract, but also his right to recover the contract price of $8,250.00. This was done by cross-action which possessed some of the characteristics of a recoupment. 47 Am. Jur. 708. Tower charged that Flores had failed to complete his contract and thus sought to reduce any

recovery to which Flores might be entitled and to recover an over plus in favor of Tower should it ultimately be determined that one existed.

■ The factual situation reflected by the record is somewhat unusual. On July 8, 1954, while Flores was engaged in work upon his contract, Tower either rightfully or wrongfully cancelled the contract. On July 10th Tower employed the firm of Hall & Redinger to complete the fill and paid such organization the sum of $10,219.93 for its work in this regard. Flores refused to accept discharge or treat the contract as cancelled but continued to work on the fill. Apparently he and Hall & Redinger worked together until the job was completed. The trial court held on the basis of a jury's finding that Tower's discharge of Flores was wrongful. The Court of Civil Appeals held, and we think rightfully, that even though Flores' discharge was wrongful, Tower had the right to renounce the contract and stand an action for damages, absent considerations which would render equity jurisdiction applicable. Rockingham County v. Luten Bridge Co., 35 F. 2d 301, 66 A.L.R. 735. Under such holding Flores could not recover the full contract price and this holding necessitated a remand.

■ We are, however, of the opinion that the Court of Civil Appeals erred in restricting the remand to certain elements or theories of recovery and defense relating to Item No. 7 of the subcontract. Items Nos. 4 and 7 constitute the bases of severable causes of action. The judgment of the Court of Civil Appeals as to Item No. 4 may properly be affirmed, but the same cannot be said for Tower's claim against Flores for the recovery of the amount paid by Tower to Hall & Redinger. One of the dominant issues involved in this claim is whether the discharge of Flores was justified or wrongful. This issue is likewise of controlling importance in determining the measure of Flores' recovery under the contract. Of Hamill v. Burleson, Texas Civ. App., 278 S.W. 2d 571, wr. ref., n.r.e. In other words, the Tower cross-claim and the component issues embraced therein are so intermingled with the question of Flores' recovery under the contract and the extent thereof that they cannot be afforded separate treatment by severance without violating the rule proscribing the trial of causes by piecemeal. This matter was recently discussed by this court and the applicable authorities reviewed in Waples-Platter Co. v. Commercial Standard Insurance Co., 294 S.W. 2d 375 and for that reason further discussion is deemed unnecessary.

■ The judgment of the Court of Civil Appeals in so far as it denies Flores' claim for extras under Item No. 4 of the subcontract is affirmed. Such judgment in so far as it relates to Item No. 7 of the subcontract is modified so as to provide for a general remand and another trial of all claims and cross-claims of the parties hereto. Under such remand, the parties may make such amendments of their pleadings as they desire in accordance with the Texas Rules of Civil Procedure. We attempt no discussion of matters which may possibly arise as a result of such amendments.

The judgment of the trial court awarded a recovery of $21,-339.13 against Tower and in favor of Flores. This total included a number of items not here involved. However, included in such total was the sum of $2,986.19 awarded under Item No. 4 of the subcontract for bolts, nuts and galvanizing which the Court of Civil Appeals correctly held was not allowable as an extra. Also included were two sums relating to Item No. 7, namely $8,250.00, the lump sum contract price, and $3,843.00 for "extras." In order to carry out the judgment of this Court the cause of action relating to Item No. 7 of the subcontract will be severed from the other actions set forth in the trial pleadings and said cause of action and cross-claims incident thereto remanded to the trial court for new trial in accordance with this opinion. The money judgment of the trial court will be reformed so as to eliminate therefrom the above mentioned itms of $2,986.19, $8,250.00 and $3,843.00, leaving a balance of $6,259.94 in favor of Flores, together with interest thereon (as provided by the judgment of the trial court) at the rate of six per cent per annum from July 26, 1954 until paid. Costs of appeal are adjudged against Hunter Flores.

Judgment of the Court of Civil Appeals modified and as modified affirmed.

Opinion delivered May 15, 1957.

Rehearing overruled June 12, 1957.