NEI CORPORATION, Texas, et al., Appellants,

v.

GLENN McMILLAN DEVELOPING CO. et al., Appellees.

No. 1573.

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 6, 1977.

Henry J. Novak, Jr., Lykos, Bergner & Oberwetter, Houston, John J. Pichinson, Henry E. Bower, Corpus Christi, Russell Morton Brown, Alexandria, Va. (on appeal only), for appellants.

William Key Wilde, Charles G. King, J. Woodfin Jones, Bracewell & Patterson, Houston, for appellees.

CIRE, Justice.

This appeal is from a judgment for plaintiff on its suit for damages for breach of contract.

On March 30, 1973 a contract for the sale of land was entered into between appellee Glenn McMillan Developing Co. (McMillan) as vendor and appellant NEI Corp., Texas (NEI, Texas) as purchaser. Performance of the contract was guaranteed for McMillan by its parent company, appellee Westchester Corp. and performance for NEI, Texas was guaranteed by its parent company, appellant NEI Corp., a Delaware corporation. The subject of the sale was the remaining undeveloped portion of a large tract of land in northwest Harris County, known as the Northampton Subdivision, development of which had been begun by McMillan. This was valuable residential property, in a wooded area on rolling land, through the center of which Willow Creek meandered across the subdivision from west to east. The contract called for McMillan to end its development of the subdivision and transfer all of its title and interest in the subdivision, including the land and development offices, to NEI, Texas.

The total amount of land included in the contract was not an issue in the case. It was admitted in NEI, Texas's second amended sworn answer that the contract was for the sale of approximately 946 acres of land, to be conveyed in phases, as called for in the opening clause of the contract:

> Seller agrees to sell and convey to Purchaser in phases, and Purchaser agrees to purchase and accept conveyance in phases, of the Subject Property as herein defined under the terms and conditions as herein set forth as follows . . . .

The sale of Phase I was completed and is not involved in this suit. Phase II covered an area north of Willow Creek and had been platted for development. Phase III was an area of indeterminate size, lying within "base tracts," and consisted of a flood plain along Willow Creek. This phase was left without an exact acreage, because the extent of the flood plain had not been determined at the time of signing the contract. Because the flood plain would be unsuitable for homesites, it was contemplated that the land in this area would be sold at $1,500.00 per acre, a price much lower than the cost of the land in the other phases. The land in Phase III was to be developed for recreational uses, including a golf course. The contract described this area:

> The property which is the subject matter of PHASE III of this Contract is the land lying along the North and South banks of Willow Creek within the base

tracts as defined in Exhibit "A" which is (1) not included within the perimeter boundaries of any subdivision approved for recording in Harris County, Texas; and (2) lies below the contour established or approved by the Harris County Flood Control District as evidencing the high water level within the base tracts.

Finally, Phase IV and subsequent phases were to be carved out of new sections of Northampton Subdivision to be platted by McMillan out of the base tracts. The contract also provided for unrestricted reserves to be set aside within the base tracts. These were shown on a large map of Northampton Subdivision attached to the contract as Exhibit B. The reserves would be available for apartments, townhouses, or commercial or business purposes, and would be included only at NEI, Texas's option. The map outlined the location of the base tracts as well as the reserves, which were wholly within the base tracts.

The base tracts were described in Exhibit A, attached to the contract and made a part thereof, as:

Base Tract No. 1—That portion of the John Brock Survey, Abstract 122, lying North of NORTHAMPTON SECTION THREE as reflected in Volume 169, Page 112 of the Map Records of Harris County, Texas, and NORTHAMPTON SECTION FIVE as reflected in Volume 188, Page 29 of the Map Records of Harris County, Texas; and lying East and North of that certain 120 acre tract out of the Westerly portion of the John Brock Survey conveyed to W. A. Kirkland, et al, by Deed recorded in Volume 5865, Page 131 of the Deed Records of Harris County, Texas.

*    *    *    *    *    *

Base Tract No. 2—19.7077 acres of land in the Levi Gosling Survey, Abstract 280, Harris County, Texas, and being more particularly described by metes and bounds as Tract No. 2 in that certain Deed dated October 14, 1964, from Lonnie D. Harrison, Trustee, to W. Harold Sellers, Trustee, recorded in Volume 5865, Page 109 of the Deed Records of Harris County, Texas, LESS AND EXCEPT:

a. A portion of the dedicated right of way for Dovershire Road as shown on the plat of NORTHAMPTON SECTION FOUR recorded in Volume 171, Page 75; and,

b. A portion of a 7 acre tract conveyed to Norchester Municipal Utility District off the South end of Base Tract 2.

*    *    *    *    *    *

Base Tract No. 3—13.6527 acre tract of land out of the Levi Gosling Survey, Abstract 280, Harris County, Texas, and being more particularly described by metes and bounds as Tract 3 in that certain Deed dated October 14, 1964, from Lonnie D. Harrison, Trustee, to W. Harold Sellers, Trustee, recorded in Volume 5865, Page 109 of the Deed Records of Harris County, Texas, LESS AND EXCEPT:

a. A portion of the dedicated right of way for Dovershire Road as shown on the plat of NORTHAMPTON SECTION FOUR recorded in Volume 171, Page 75; and,

b. A portion of a 7 acre tract conveyed to Norchester Municipal Utility District off the South end of Base Tract 3.

This litigation centers around the flood plain which determined the extent of Phase III. It is undisputed that, at the time the contract was entered into, the parties believed the flood level would be established at an elevation of 118 feet. At that elevation the flood plain would contain some 182 acres. In September 1973, the Commissioners Court of Harris County established flood control regulations which set the flood plain elevation in the area at approximately 129 feet. This area encompassed over 400 acres of land, including much or all of the land to be included in Phase II.

NEI, Texas was unwilling to buy such a large tract of land which could not be used for residential homesites. The parties entered into negotiations in which NEI, Texas sought to redefine the area of Phase III and to abrogate its obligation to purchase Phase II. The parties agreed to alter Phase III to

297 acres. McMillan had a warranty deed for that acreage prepared and NEI, Texas delivered its earnest money in the amount of $127,304.49 to a title company for closing. However, they could not agree on the acreage to be included in Phase II. McMillan then sued NEI, Texas and NEI Corp. to recover damages in the amount of $898,-660.00 for breach of contract.

NEI, Texas counterclaimed against McMillan and joined Westchester Corp. as a third-party defendant, claiming McMillan's tender of more acreage in Phase III than originally contemplated constituted an abandonment of the contract, and prayed for liquidated damages of $898,660.00.

Trial was to a jury, at which testimony was given in support of the facts set out above. Also introduced into evidence were McMillan's warranty deed for 297.9394 acres of land, purported to be the entire area of Phase III, and NEI, Texas's corporate resolution authorizing the execution of a note for $446,909.10 for the purchase of Phase III. The only disputed question was the amount of land which the parties contracted to include in Phase III.

Two special issues were submitted, in answer to which the jury found that NEI, Texas agreed to buy 297 acres in Phase III under the contract, and that McMillan stood ready, willing, and able to perform its obligations under the contract, including the transfer of the land in Phase III to NEI. The failure of NEI, Texas to consummate the transaction was therefore a breach of contract. The court entered judgment on July 26, 1976 for McMillan in the amount of $898,660.00.

Appellants filed the transcript of the case with this court on November 12, 1976. Thereafter, on December 20, 1976, a judgment nunc pro tunc was entered on motion by McMillan to correct a misrecital of appellant NEI Corp.'s name. Tex.R. Civ.P. 317. Appellees have moved to dismiss the appeal because the prior judgment has been vacated and no appeal has been taken from the judgment nunc pro tunc. Appellees correctly state the rule that the right to appeal dates from the rendition of

the judgment nunc pro tunc. Tex.R.Civ.P. 306b. However, we consider appellants' motion for new trial and appeal bond as prematurely filed. Under rule 306c they are not ineffective. These instruments are deemed to have been filed on the date of, but subsequent to, the entering of the judgment nunc pro tunc. *See Capitol Life Ins. Co. v. Rutherford,* 468 S.W.2d 535, 536 (Tex. Civ.App., Houston [1st Dist.] 1971, no writ). The case is properly before us and appellees' motion to dismiss is overruled.

Appellants present two points of error. The first point assigns error in the court's judgment enforcing the contract, because the contract is unenforceable under the Statute of Frauds, Tex.Bus. & Comm.Code Ann. § 26.01 (1968). Under this point, they contend the land description in the contract for sale was insufficient to identify the land to be conveyed. Except for a general allegation of the Statute of Frauds defense, no objection was raised in the trial court concerning the sufficiency of the description.

In its first amended answer, NEI, Texas pleaded the Statute of Frauds as a defense against the oral agreement as to the size of Phase III:

In answer to the allegations of McMillan in its original petition, NEI pleads the affirmative defenses of (1) abandonment and alteration of the express terms of the written contract by a subsequent oral proposal by McMillan, not reduced to writing, wholly defeating the terms of the written contract; (2) to the extent that NEI may have acquiesed [sic] in or assented to the aforesaid oral proposal by McMillan, which acquiesence [sic] or assent is not admitted but expressly denied, such oral agreement is within the statute of frauds and is unenforceable against NEI . . . .

Its second amended answer read:

NEI pleads the affirmative defenses of abandonment and alteration of the express terms of the written contract by a subsequent oral proposal, not reduced to writing, wholly defeating the terms of the written contract; the statute of frauds . . . . .

NEI Corp. filed only a general denial.

Thus, appellants went to trial without any suggestion that the contract violated the Statute of Frauds because of insufficient description of the land to be conveyed. During the course of trial, counsel for appellants characterized their reliance on the Statute of Frauds thus:

Therein arises our statute of frauds defense, that the 297 acres was an entirely independent oral agreement between the parties and is unenforceable. The only way NEI could have performed was to have failed to accept 182.5 acres.

Appellants raised no objection to the contract when it was offered in evidence. Appellees argue that the appellants have waived any defense based on the inadequacy of the land description because there was no fair notice of that defense in the pleadings and no objection was made to the introduction of the contract in evidence. However, it is not necessary for us to consider this argument. We overrule appellants' first point of error for another reason.

■ In their amended motion for new trial, appellants' first ground said: "The Court erred in entering judgment for Plaintiff for the reason that Plaintiff's cause of action is barred by the Statute of Frauds, Article 3995, Tex.Rev.Civ.Stat." This ground for new trial was too general to preserve the error of which appellants now complain. Rule 321, Texas Rules of Civil Procedure, requires each ground of a motion for new trial to refer to the error complained of "in such way as that the point of objection can be clearly identified and understood by the court." This ground gave no indication that appellants were complaining of any insufficiency in the contract's land descriptions. The point not only could not have been identified and understood, it was actually calculated to mislead the trial court. Rule 322 directs that "[g]rounds of objections couched in general terms . . . shall not be considered by the court." *Wagner v. Foster,* 161 Tex. 333, 337, 341 S.W.2d 887, 890 (1960). This ground for new trial did not preserve the alleged error for appeal.

■ Appellants' second point asserts the court erred in awarding liquidated damages on conclusory evidence. The evidence offered in support of McMillan's claimed damages was the contract and the testimony of Glenn McMillan, chairman of the boards of both Glenn McMillan Developing Co. and Westchester Corp. He testified that the liquidated damages as calculated under the contract were $898,660.00. Appellants contend this testimony by McMillan was only a conclusion and was not probative evidence upon which the court could have based its judgment. We overrule this point. Appellants do not complain of the amount of the damages, but only of the evidence needed to justify the amount requested. No testimony was necessary to support an award of damages. The damages were calculated under the liquidated damages clause of the contract. The clause was unambiguous and, under the rule that construction of contract provisions is a question of law, the determination of liquidated damages was a matter for the court. *Tower Contracting Co. v. Flores,* 157 Tex. 297, 302, 302 S.W.2d 396, 399 (1957).

The liquidated damages clause read:

10. *Defaults of Purchaser:* If at the time of closing of any phase of this Contract, Seller has performed or tendered full performance of all of Seller's covenants and agreements herein set forth which are then performable, and Purchaser then fails or refuses to consummate this agreement for any reason, then Seller shall have the option:

a. to cancel and terminate this Contract thereby cutting off any and all future, contingent or equitable rights of Purchaser in any land not previously deeded to Purchaser; and thereupon Purchaser shall be obligated to pay to Seller liquidated damages for such breach in an amount determined by the following formula: $10\% \times 2.50 \times$ acreage remaining in base tracts not previously deeded to Purchaser times current lot price as

defined herein ($6,500.00 as to PHASE I, II, and IV); or

b. Seller may sue for specific performance of this Contract.

■ Under this point, appellants allege that the liquidated damages provision did not apply to a breach of the contract as to Phase III. We do not agree. The liquidated damages provision applied to all phases, but the acreage included in Phase III was not to be used in the formula for figuring liquidated damages. This was because the price per acre of Phase III land was only $1,500.00.

The contract was for the sale of 946 acres. Phase I, which had already been closed and was not a part of this litigation, consisted of 96 acres. This left 850 acres remaining at the time of trial. The jury found that Phase III consisted of 297 acres. Subtracting the 297 acres left 553 acres as the amount of land to be used in the liquidated damage formula. Ten percent × 2.50 × 553 acres × $6,500.00 equals $898,625.00. From this amount must be subtracted the $127,304.49 which had been deposited in the registry of the court to be paid to appellees, leaving a net amount of $771,320.51. This figure is $35.00 less than the amount awarded by the trial court, and the trial court's judgment should be reformed to correct that error.

That portion of the judgment awarding Glenn McMillan Developing Co. the sum of $771,355.51 is reformed to award the sum of $771,320.51. The judgment of the trial court as reformed is in all other things affirmed.