**Paul BROWN d/b/a Paul's Electric Company, Appellant,**

v.

**PAYNE–LADEWIG, INC., Appellee.**

**No. 19500.**

Court of Civil Appeals of Texas, Dallas.

May 24, 1978.

Rehearing Denied June 29, 1978.

Marshall W. Dooley, Herndon, Girand & Dooley, Dallas, for appellant.

Clarence O. Bentley, Dallas, for appellee.

GUITTARD, Chief Justice.

In this suit for breach of contract, the verdict was favorable to plaintiff, but the trial court rendered judgment for defendant notwithstanding the verdict on the ground that the evidence shows as a matter of law that the contract was subject to a condition which was never met. We hold that the trial court erred in this respect. Accordingly, we reverse and remand with instructions to render judgment on the verdict.

Plaintiff Paul Brown was a heating and air-conditioning contractor who was preparing to bid on a subcontract for installation of air-conditioning and heating equipment in connection with the remodeling of a government family-housing project at Fort Hood, Texas. He approached defendant Payne-Ladewig, Inc., a supplier of such equipment. Defendant obtained a copy of the specifications from the United States Army Corps of Engineers, and defendant's estimator, Tom Keegan, gave Brown a quotation on the telephone of $53,569 for supplying the equipment and the price. Brown used this quotation in making his bid to the general contractor, who, in turn, used Brown's bid to make a successful bid to the Corps of Engineers. When the general contractor's bid was accepted, Brown notified Keegan and instructed Keegan to go ahead and prepare data on the equipment for submission to the Corps of Engineers for approval. After two unsuccessful attempts to obtain approval of Payne-Ladewig's equipment, Brown obtained equipment from another supplier at an increased price and brought this suit to recover the difference, alleging that Payne-Ladewig had failed to supply the equipment required by the specifications. Payne-Ladewig denied that a binding contract was made and alleged that

its written quotation was conditioned upon approval by the Corps of Engineers and placement of an order by Brown for the equipment, that final approval by the Corps of Engineers was never obtained, and that Payne-Ladewig never received an order from Brown.

In response to special issues, the jury found (1) that plaintiff and defendant entered into an agreement whereby plaintiff agreed to purchase and defendant agreed to sell the items of equipment listed at the prices stated in defendant's quotation, (2) that defendant failed to supply those items in accordance with the terms of their agreement by reason of the fault, act, or omission of the defendant, and (3) that the amount of plaintiff's damages resulting from defendant's failure to comply with the agreement was $27,853.

The defendant filed a motion for judgment in its favor notwithstanding the verdict, which the court granted. The only ground recited in the judgment for disregarding the verdict is that the court "is of the opinion and finds that as a matter of law performance by defendant Payne-Ladewig, Inc. was conditioned upon approval of the equipment by the United States Corps of Engineers."

On this appeal, plaintiff contends that the trial court erred in this finding because no facts were presented to support it, or at least, that it was based on disputed facts which should have been submitted to a jury on a proper request. After a review of the evidence, we agree that existence of the alleged condition was not established as a matter of law.

The question of existence of a condition precedent must be determined in the light of the specifications for the job prepared by the Corps of Engineers, on which both parties, as well as the general contractor, made their bids. The plans specify one hundred and one units of air-conditioning and hearing equipment, of three different capacities, for housing units to be remodeled. The specifications require the general contractor to proceed as soon as practical after notice and, before commencement of installation of materials and equipment, to submit to the government representative for approval a complete schedule of materials and equipment proposed for installation. The specifications further provide that approval of materials will be based on the manufacturer's published ratings, that those not in accordance with specifications will be rejected, and that no payment will be allowed for materials incorporated into the work if the required approvals have not been obtained. The general contractor is also required to submit shop drawings for approval before proceeding with any of the work.

The only provision in the contract documents for approval or disapproval of the contractor's submittals with respect to materials and equipment is the authority of the Corps of Engineers to determine compliance or non-compliance with the plans and specifications. Defendant asserts that the specifications are loosely drawn and leave much for subjective determination by the engineers, but there is no evidence supporting this assertion. There is testimony that frequently several submittals are required before approval is secured, but, insofar as appears in this case, disapproval of the submittals was based on the engineers' determination that the equipment described in the defendant's submittals did not comply with the plans and specifications. When Brown was asked on cross-examination whether some of the specifications were vaguely drawn so that what might apparently meet the specifications might not meet the approval of the Corps of Engineers, he responded, "No, if you can prove that you can meet it, they will accept it." There is no evidence to the contrary.

The testimony shows that in accordance with the requirements of the specifications concerning advance approval of materials and equipment, the practice was for the material supplier to provide its submittals concerning the equipment to the subcontractor, who passed them on to the general contractor, who, in turn, presented them to the Corps of Engineers for approval. If the Corps of Engineers disapproved any item or

required additional data, the matter was passed back down the line to the supplier, who then provided additional information in another submittal. Since the bids of the subcontractors and suppliers, like that of the general contractor, were based on the specifications, it is reasonable to construe such bids, when accepted, as obligating the bidders to furnish the information to be submitted by the general contractor for approval. Such a construction is supported by decisions holding that contracts that refer to specifications have the effect of incorporating the specifications into the contract. *Tower Contracting Co. v. Flores*, 157 Tex. 297, 302 S.W.2d 396, 398 (1957); *Delhi Pipeline Corp. v. Lewis, Inc.*, 408 S.W.2d 295, 298 (Tex.Civ.App.—Corpus Christi 1966, no writ).

In this case, the evidence is clear that the parties dealt on the basis of the specifications and the procedure for approval of equipment prescribed in the specifications. Both parties had had long experience with government contracts of this kind. Defendant's estimator, Tom Keegan, obtained a copy of the specifications before making his bid. He testified that the submittals were intended for the use of the Corps of Engineers to determine whether the equipment complied with the terms of the contract.

The principal controversy between the parties is whether defendant's obligation to supply the equipment was conditioned upon approval of its submittals by the Corps of Engineers, or whether defendant had an obligation to furnish equipment that would comply with the specifications, as determined by the Corps of Engineers. The evidence, as we view it, raises at least a fact issue that defendant was obligated to furnish equipment that would comply. Keegan testified that when he gave his quotation, he told Brown that the price was "subject to approval by the Corps of Engineers through the acceptance of the equipment." He also testified, however, that he told Brown that Payne-Ladewig "could comply and would comply at that price." No such condition appears in his written quotation of the following day, which says,

"This quotation shall remain firm for a period of 60 days from this date." Keegan acknowledged that he represented to Brown that to the best of his knowledge the equipment would comply with the specifications and that he understood that Brown would use the quoted figure in making his bid to the general contractor. Brown then advised him that the price quoted was the best he had received and that he would probably use it. According to Keegan, Brown called him back later, said that he had been awarded the contract, and instructed him to "go ahead and make up the submittal, which means ten copies of drawings and specifications that he would have to submit to the Corps of Engineers."

Brown's testimony concerning his conversations with Keegan does not differ materially from Keegan's, except that he does not confirm Keegan's statement that the price was subject to approval of the Corps of Engineers. Brown said that when Keegan gave him the price, he found that it differed so much from the other prices he had received that he called Keegan back and asked him if he had looked at the specifications and was satisfied with the price, and Keegan said that he was. Brown told him that he was going to use Keegan's bid because it was lower, and he then telephoned the general contractor and gave his own price for the subcontract.

On cross-examination, Brown testified that he told Keegan that Payne-Ladewig "would have the job if it meets specifications," and if they did not meet the specifications, they did not have an order. After he was awarded the subcontract, he told Keegan to get the submittal in and approved as soon as possible. He said that he considered himself bound if Payne-Ladewig met the conditions, but did not consider himself unconditionally bound if they did not deliver what he had bought.

This testimony is sufficient to support a jury finding that the approval of the Corps of Engineers was not a condition to the existence of the contract, but was a method of determining in advance of delivery

whether the equipment offered would meet specifications. The jury was justified in regarding Payne-Ladewig's quotation as an offer, which was accepted when Brown told Keegan that he had been awarded the contract and to proceed with the submittal, so that Payne-Ladewig was then bound to furnish the equipment in accordance with the specifications. Under this view of the evidence, Brown's obligation to order the equipment and pay for it was conditioned on approval by the Corps of Engineers, but Brown was contractually bound, as was Payne-Ladewig, to seek such approval. The specifications imposed on the general contractor the obligation to submit the required information for approval before installation of the equipment. Each subcontractor and supplier whose bids were accepted had the same obligation within the scope of their respective contracts. These submittals were as much an obligation of the contract as delivery and installation of the equipment. When Brown told Keegan to proceed with the submittal, he was in effect instructing Payne-Ladewig to proceed with performance of the contract in accordance with the specifications.

Any other interpretation of the evidence would be unreasonable. The obligation to submit data for approval was that of the general contractor, and surely no one would seriously contend that the general contractor would have had no obligation to the government if his submittals had not been approved by the Corps of Engineers. Unless the same obligation was imposed by the specifications on the subcontractors and suppliers whose bids were accepted, no contractor would ever be in a position to make a firm bid. Keegan admits that he knew that Brown would use the price quoted for the equipment as the basis for a firm bid on the air-conditioning and heating subcontract. Keegan must have known also that Brown would not have been in a position to make a firm bid if Payne-Ladewig's bid on the equipment had not been equally firm. To say that a supplier has no obligation until its equipment is approved would be to say that simply by failing to supply all the information required concerning his equip-

ment, he could avoid any obligation and subject the subcontractor to whatever increased expense he might incur by obtaining equipment elsewhere. It is unreasonable to suppose that either party so intended. If the procedure had been to obtain approval of the equipment from the Corps of Engineers before the general contractor became bound to the government and the subcontractors became bound to the general contractor, then there might be some logic in finding that the supplier had no obligation until his equipment were approved, but that was not the case here. The specifications make it clear that approval is required after the parties are bound. Consequently, we conclude that the trial court erred in holding as a matter of law that performance by Payne-Ladewig was conditioned on approval by the Corps of Engineers.

In conclusion, although we reverse the trial court's action in disregarding the verdict, we commend the procedure the court adopted in this case. After extensive argument by defendant on a motion for instructed verdict, the court overruled the motion, submitted the case to the jury, and considered the same questions again on defendant's motion for judgment notwithstanding the verdict. This procedure has enabled this court to make a final disposition of the litigation without a second trial. When a jury has heard the evidence, a peremptory instruction, though permitted by the rules, rarely, if ever, contributes to the efficient administration of justice. We encourage all trial courts to follow the procedure adopted in this case.

For the reasons stated, we reverse the judgment of the trial court and remand the cause to the trial court with instructions to determine the amount of interest to which plaintiff is entitled and to render judgment for plaintiff on the verdict for the amount of the damages found by the jury, together with interest in the amount so determined.