AFFIRM; Opinion Filed November 9, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-10-01360-CV

**BULLDOG IRONWORKS, L.L.C., Appellant**

**V.**

**TOP FLIGHT STEEL, INC., Appellee**

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-09-04424-B**

# MEMORANDUM OPINION

Before Justices Moseley, Lang-Miers, and Murphy
Opinion By Justice Moseley

This is an appeal from a non-jury trial in a construction contract dispute between two subcontractors. Bulldog Ironworks, L.L.C. sued Top Flight Steel, Inc. asserting Top Flight failed to complete its subcontract to erect steel dumpster panels and seeking to recover expenses Bulldog incurred performing that job. Top Flight filed a counterclaim for breach of contract to recover the remaining balance of its subcontract. After a bench trial, the trial court rendered judgment that Bulldog take nothing from Top Flight and that Top Flight recover the balance on the subcontract plus attorney's fees. The trial court filed written findings of fact and conclusions of law.

Bulldog raises nine issues on appeal; in general Bulldog challenges the factual sufficiency of the evidence to support the findings rejecting its claim and supporting the judgment for Top

Flight. The background of the case and the evidence adduced at trial are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

This case concerns the installation of steel-reinforced concrete panels around the trash dumpsters at a shopping center project. The general contractor, Mycon Construction Company, subcontracted with Bulldog to fabricate the steel and erect the steel-reinforced concrete panels for the project. Bulldog in turn subcontracted the erection of the panels to Top Flight under a fixed-price contract.

Before construction, Terry Blair for Top Flight, Eddie Gaston for Mycon, and Kevin Lassiter for the concrete supplier, Pavecon, met at the site to determine the layout and construction sequencing of the main building panels. At the time of the meeting, the plans for the dumpster panels were not finalized and the sequencing and placement of the dumpster panels were not decided.

The evidence conflicts about what happened at the meeting regarding the dumpster panels. Gaston testified that Blair said the panels were light and could be poured anywhere without a problem. Blair testified he told Gaston to pour the panels within fifty feet of where they needed to be installed and he could install them. Lassiter agreed that Blair told Gaston about the fifty-foot requirement. Lassiter said it was common for erectors to use a fifty-foot spacing requirement.

After the panels for the main building had been installed, the dumpster panels were ready to be poured by the concrete supplier. It is undisputed that Gaston (for Mycon) directed Pavecon to pour the dumpster panels on the front parking lot, several hundred feet from where they would be installed at the back of the building. Bulldog was not involved in this decision.

A few weeks after the dumpster panels had been poured, a Top Flight crew came out to install them. Blair testified he was shocked that the panels had been poured in the front parking lot and called Gaston to complain. Blair told Gaston Top Flight would have to bring a truck and a crane to move the panels to the back before installing them and that there would be an additional cost. Gaston responded that Blair had agreed the panels could be poured anywhere and could be installed with no problem. Blair denied making that statement.

Shortly thereafter in December 2008, Top Flight sent an e-mail to Bulldog requesting a change order for $7,500 for the extra cost of moving the panels, i.e., for the extra time involved and the expense of a truck and crane. Bulldog attempted to get Mycon to agree to the change order, but Mycon refused. There is conflicting evidence about whether Top Flight was informed there would be no change order. Top Flight's president, Jaime Chacon, testified that Top Flight was willing to install the panels before approval of a change order, but that it was never told when the panels were ready to be installed. Blair testified that even without the change order, they probably could have worked something out to do the installation. He said they could have negotiated the price of the extra work, but no one asked to do so. Blair testified Gaston called him several times about installing the panels, but when Blair went to the site, it was not prepared for the installation. Gaston testified Top Flight refused to install the panels without the change order.

According to Bulldog, Mycon insisted that if the panels were not installed by April 2009, it would hire another contractor to do the work and charge Bulldog for the expense. Bulldog then rented equipment and used its own employees to install the panels, beginning March 31, 2009. On April 1, 2009, unaware that Bulldog was doing the work, Chacon sent an e-mail to Bulldog asking when Mycon would be ready to install the panels and stated he needed the change order. Soon after this Blair went to the site and discovered that the panels had already been installed.

Bulldog invoiced Top Flight for $15,719.60 for the cost of labor and equipment rentals for installing the panels. Top Flight refused to pay. The evidence indicates that Top Flight had been paid all of its contract price except the last ten percent ($10,894.20), which was retained by the general contractor until resolution of this dispute. Bulldog sued Top Flight for breach of contract to recover the additional expense. Top Flight filed a counterclaim for breach of contract and sought to recover the balance due on the subcontract.

The trial court rendered judgment that Bulldog take nothing on its claim and Top Flight recover the retainage amount from Bulldog plus prejudgment interest and attorney's fees. The trial court found, among other things, that Top Flight performed the entire contract except for installing the dumpster panels, that Bulldog did not notify Top Flight to complete installation of the panels, that Top Flight did not breach the subcontract, and that Bulldog breached the subcontract by preventing Top Flight's performance causing Top Flight damages in the amount of the retainage.

## STANDARD OF REVIEW AND APPLICABLE LAW

Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict and may be reviewed for legal and factual sufficiency under the same standards. *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 912 (Tex. App.—Dallas 2008, no pet.). To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and set aside the finding only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Id.* The appellant should direct its sufficiency attack to specific findings of fact rather than the judgment as a whole. *See Shaw v. County of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied). Unless challenged on appeal, findings of fact are binding on the parties and the appellate court. *Rich v. Olah*, 274 S.W.3d 878, 884 (Tex. App.—Dallas 2008, no pet.). As trier of fact, the trial court is the sole judge of the credibility of the

-4-

witnesses, may believe one witness over another, and may resolve any conflicts in the testimony. *Sanders*, 248 S.W.3d at 917–18. We review the trial court's conclusions of law de novo. *Rich*, 274 S.W.3d at 884.

The elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) damages as a result of the breach. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007, no pet.). A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 299 (Tex. App.—Dallas 2009, no pet.).

A contractor who is unjustifiably prevented by an owner from finishing his work may sue and recover as provided by the contract. *Farris v. Smith Erectors, Inc.*, 516 S.W.2d 281, 283 (Tex. App.—Houston [1st Dist.] 1974, no pet.). As set forth in *Farris*:

> A contractor who is unjustifiably prevented by the owner from finishing his work may sue and recover as provided by the contract. *Smith v. Lipscomb*, 13 Tex. 532 (Tex. Sup. 1855); *Dockery v. Durham*, 3 S.W.2d 514, 519 (Tex. Civ. App.—Waco 1927, writ dism'd). His recovery in such case is measured by the difference between the contract price and what it would have cost him to carry out the contract. *Waco Tap R. Co. v. Shirley*, 45 Tex. 355 (Tex. Sup.1876); *Carras v. Birge*, 211 S.W.2d 998 (Tex. Civ. App.—Dallas 1948, writ ref. n.r.e.). Although he is entitled to recover the profits which the contract would have yielded, he is not entitled to receive, if he has only partially performed the contract, the same amount of money to which he would have been entitled had it been fully executed. *Porter v. Burkett*, 65 Tex. 383 (Tex. Sup.1886). The burden of proof is upon the contractor to provide the data from which such damages may be computed. *Tower Contracting Company v. Flores*, 294 S.W.2d 266 (Tex. Civ. App.—Galveston 1956, aff'd as modified, 157 Tex. 297, 302 S.W.2d 396).

*Id. See also Kleiner v. Eubank*, 358 S.W.2d 902, 905 (Tex. Civ. App.—Austin 1962, writ ref'd

n.r.e.) (citing *Tower Contracting*); *Farris*, 516 S.W.2d at 283.[1]

## ANALYSIS

In Bulldog's sixth issue,[2] it contends the evidence is factually insufficient to support the trial court's finding in Finding of Fact 11 that Top Flight did not breach the contract. In its seventh and eighth issues, Bulldog challenges the trial court's Conclusion of Law 1, that Bulldog failed to meet its burden of proof on its claim for breach of contract, and Conclusion of Law 3, that Bulldog failed to comply with the contract with Top Flight. In its ninth issue, Bulldog contends the evidence is factually insufficient to support the trial court's Finding of Fact 12, that "Bulldog breached its contract with [Top Flight] by preventing performance . . . ." We discuss these issues together.

With respect to whether Top Flight breached, Bulldog points to the undisputed evidence that part of Top Flight's subcontract was to place the dumpster panels at their final location and that Top Flight did not complete that portion of the contract. And indeed the trial court found—and it is undisputed on appeal—that Top Flight performed all of its work "except for the installation of the dumpster panels."

However, Bulldog does not challenge the trial court's Finding of Fact 8, that Top Flight "was never notified by Bulldog or the general contractor to complete the installation of the dumpster panels, and without allowing [Top Flight] an opportunity to perform, Bulldog undertook to install the dumpster panels using its own employees." This unchallenged finding is binding on Bulldog; it supports the conclusion that Bulldog prevented Top Flight from performing and that Bulldog breached ("did not comply" in the words of the trial court's Conclusion of Law 3) the contract.

---

[1] Alternatively, the terminated contractor can elect to treat the contract as rescinded and recover on quantum meruit the full value of the work done, even though it may exceed the contract price. *Tower Contracting*, 302 S.W.2d at 399. Here, Top Flight did not assert a claim for quantum meruit, so we do not discuss this theory of recovery further.

[2] Bulldog's first six issues relate to the question of breach and Bulldog argues them together. We address them here, but note that issues one, two and five attack the judgment generally, not specific findings of fact. Thus, they present nothing for review. *See Shaw*, 251 S.W.3d at 169.

Although the evidence was disputed, we conclude it supports the trial court's findings that Top Flight did not breach the contract and that Bulldog did. We reject Bulldog's sixth, seventh, eighth, and ninth issues.[3]

## CONCLUSION

We conclude the evidence is factually sufficient to support the trial court's findings of fact challenged on appeal. Accordingly, we affirm the trial court's judgment.

_____
JIM MOSELEY
JUSTICE

101360F.P05

---

[3] Bulldog's third and fourth issues attack specific findings of fact about where the dumpster panels were poured. Those findings are evidentiary and not material because it is undisputed that Bulldog did not direct the placement of the panels. *See Norred v. Hartsfield*, 360 S.W.3d 583, 587 (Tex. App.—Dallas 2011, no pet.); *Cooke County Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.) (erroneous finding of fact is harmless and not grounds for reversal if finding is immaterial).



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

BULLDOG IRONWORKS, L.L.C.,
Appellant

No. 05-10-01360-CV          V.

TOP FLIGHT STEEL, INC., Appellee

Appeal from the County Court at Law No. 2
of Dallas County, Texas. (Tr.Ct.No. CC-09-
04424-B).
Opinion delivered by Justice Moseley,
Justices Lang-Miers and Murphy
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellee Top Flight Steel, Inc. recover the full amount of the trial court's judgment and the costs of this appeal from appellant Bulldog Ironworks, L.L.C. and from SureTec Insurance Company as surety on appellant's supersedeas bond.

Judgment entered November 9, 2012.

_____
JIM MOSELEY
JUSTICE